## GASTON v. WOODMEN OF WORLD LIFE INS. SOC.

### No. 14406.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 20, 1942.

Rehearing Denied Jan. 8, 1943.

264

Musslewhite & Fenley, of Lufkin, for appellant.

A. J. Thompson, of Nacogdoches, for appellee.

SPEER, Justice.

This is an appeal by plaintiff, Mrs. Addie Gaston, from an adverse judgment entered as a result of a nonjury trial, wherein she sued Woodmen of the World Life Insurance Society on a certificate of insurance on the life of her deceased son, William P. Gaston. Mrs. Gaston will be referred to as plaintiff and the above-named insurance society as defendant.

On March 12, 1938, William P. Gaston made written application to defendant for a certificate of life insurance. On March 31, 1938, the certificate was issued and plaintiff was named as the beneficiary. On October 20, 1938, insured died. Payment was demanded by the beneficiary, refused by defendant and suit was filed.

Defendant denied liability upon grounds that the certificate was issued by it in reliance upon the truth of warranties made by deceased in his application for insurance; that said statements and warranties were false and that if the truth had been revealed therein, it would not have issued the certificate sued on.

The court found as facts the execution of the application by the insured, its contents and the issuance of the certificate by defendant in reliance upon the truth of facts stated in the application; that answers to questions in the application were warranties made by applicant; and that some of the very material ones were false. The court concluded that as a matter of law the certificate of insurance issued upon the false warranties of the insured was void and unenforceable. Plaintiff attacks certain of the court's fact findings for lack of support in the evidence, and the conclusion of law for the asserted reason it is based upon erroneous findings of fact.

The seven points presented here for reversal raise, in varying forms, the sufficiency of the testimony to support the court's fact findings to the effect that the answers and representations of insured, in the application, were false and that the defendant relied upon them to be true.

Matters material here, about which there is no controversy, are in substance: (1) The application, including the answers of inquiries therein, the laws and by-laws of the society shall constitute the basis for the issuance by the society of a certificate of insurance to applicant; (2) applicant agreed and warranted that all the statements, representations and answers to questions in the application were full, complete and true, and that any untrue statement made or any concealment of facts in the application should make any subsequently issued certificate void.

More specifically, the principal point involved is found in question 7, and the answer made by applicant. All questions in the application were to be answered "yes" or "no", and if answered "yes", blank space was provided for explanations.

Question 7 reads: "Have you within the past 10 years suffered any mental or bodily disease or infirmity, or have you within that period of time consulted or been attended by a physician for any disease or injury?" The answer was "No". Opposite this inquiry this appears: "If so state which, when and length of time." Blank space follows the last-quoted words.

The testimony offered by defendant disclosed that it relied upon the truth of the answer to the questions presented in the application, and if answer to No. 7 had disclosed that applicant had been treated for and was suffering from high blood pressure and nephritis in 1937, it would not have issued the certificate of insurance.

Defendant offered the testimony of Dr. Dubose, plaintiff's family physician, who testified, in substance, that ten or twelve months prior to date of the insured's death, which occurred on October 20, 1938, he treated the insured for nephritis, high blood pressure, Brights disease—a kidney trouble.

If the treatment was twelve months before insured's death it would have been in October before the application for insurance was made in March following. Dr. Dubose further testified that he prescribed for applicant the usual and customary treatment in such cases, such as medicine to hold down the blood pressure and the elimination of focal infection. He put applicant on a diet for these purposes. He found albumen in applicant's urine and that he was suffering with nephritis, commonly known as Brights disease; that applicant died of apoplexy and that nephritis was the contributing cause; that albumen in the urine is a symtom of nephritis or Brights disease. Witness further testified that insured had the appearance of being healthy and it was true that many men suffering with high blood pressure had the appearance of being healthy; but that a man could not have albumen in his urine and not have nephritis; that albumen in the urine is a disease. Witness said he made the usual scientific test of insured's urine and found that it contained an excessive amount of albumen. He further said, substantially, from his examination and diagnosis of the insured in 1937, and the conditions he then found, and having seen and examined the insured at the time of his death, he had not gotten rid of the high blood pressure and the albumen in his urine.

■ The eleventh question in the application was: "Are you now in good health?" The answer was "Yes". The testimony of Dr. Dubose, which does not appear to have been in any way controverted, is sufficient to support the court's findings of fact to the effect that the answers given to questions 7 and 11 were false, "in that during the year 1937, William P. Gaston (insured) consulted Dr. Dubose of Wells, Texas, for high blood pressure and nephritis and was treated for same and which infirmities contributed to his death on October 20, 1938, and that William P. Gaston was not in good health at the time he signed said application."

Under the provisions of the contract, insured warranted that the answers made to the questions were full, complete and true, and that there was no concealment of facts in the application.

■■ In contracts of this character, it matters not whether the applicant for insurance considered that his ailments amounted to sufficient grounds to justify defendant's refusal to enter into the contract of insurance. Whether he acted in good faith in making the answers shown is immaterial. The defendant was entitled to know the truth about everything inquired about and that applicant's answers should be full, complete and true, with nothing concealed. Likewise, it was entitled to know the truth about the condition of applicant's health at the time the application was made. Sovereign Camp, Woodmen of the World, v. Mendez, Tex.Civ.App., 123 S.W.2d 985, writ of error refused; Gonzalez v. Alianza Hispano-Americana, Tex.Civ.App., 112 S.W.2d 802, writ of error dismissed. Several witnesses in this case testified that as they saw and observed insured during the period of time here involved, he appeared to be a strong, robust man, in good health. Dr. Dubose said, in effect, that insured had the appearance of being in good health, but he also said this was not unusual in cases where people were afflicted as was the insured.

Woodmen of the World Life Ins. Co. v. Davenport, Judge, Tex.Civ.App., 159 S.W.2d 913, 914, involved the issuance of a writ of mandamus to require the court to render judgment for the company on a jury finding. There is a striking similarity between the facts of that case and this. In the cited case, a certificate of insurance had been issued upon an application which contained, among others, the following question: "Have you within the past five years consulted or been attended by a physician for any disease or injury or undergone any surgical operation?" The answer was "No". The jury found from the testimony that insured had in fact consulted a physician for tuberculosis within the past five years. The court held, and correctly so, we think, that the answer of applicant to the quoted question was undoubtedly untrue; that it was a material inquiry, although its materiality was not controlling, and that an instructed verdict for the insurance company should have been given. This court followed the rule announced above in Hunt v. W. O. W. Life Ins. Society, Tex.Civ.App., 153 S.W.2d 857, writ refused.

■ It is argued that because question No. 7, above quoted, was duplicitous, and that all the matters inquired about therein could not be answered in a single "Yes" or "No" reply, and that the answer being true in some respects, it was not such a misrepresentation of the facts or such a concealment of the truth as to invalidate the certificate. With this contention we cannot

agree. The answer given, although true when applied to some parts of the inquiry, yet it was false with reference to other parts. The answer was obviously not full and complete. Being untrue and incomplete, it thereby concealed the true facts that unquestionably existed at the time the application was made. As we have already seen, the applicant agreed in that very instrument that the statements and warranties contained therein were full, complete and true and that if any such statements made by him were not full, complete and true, or if any facts were concealed by him in the application, any benefit certificate issued to him upon the application should render it void. Such was applicant's contract and he, as well as his beneficiary thereunder were bound by it.

It is argued that the terms and expressions found in the application and certificate, when ambiguous in their nature, should be construed most strictly against the insurance company, preparing the documents.

The rule contended for, as a general thing, is sound, but it is equally true that it is only when the language used is ambiguous that the rule is applicable. 24 Tex.Jur., sect. 29, p. 707. The inquiries were not ambiguous; they were not of uncertain or doubtful meaning; they were not capable of being understood in either of two or more possible senses. (Webster's International Dictionary.)

By one of the points presented it is contended that since defendant undertook to make a separate and independent investigation of applicant's insurability, the trial court erred in finding as a fact that defendant relied upon the representations made in the application. Two representatives of defendant testified that it did rely upon the truth of the application in issuing the certificate. In any event such testimony was sufficient to make it an issue of fact. This issue was found by the court against plaintiff's contention. The record does show that defendant obtained a report from a Retail Credit Company on questions of applicant's identity, his duties in work performed, finances, habits, reputation and in connection with his health, asked these questions: "Any appearance of ill health" and "Physical impairments or deformities". Each of these questions was answered "No".

In Maniatis v. Texas Mutual Life Ins. Co., Tex.Civ.App., 90 S.W.2d 936, and in Woodmen of the World Life Ins. Co. v. Davenport, Judge, supra, the insurance companies did just what the defendant is shown to have done in this case—procured private information upon the points of applicant's financial standing, his physical appearance and made certain inquiries about his health. The independent investigation made in those cases and that made in the instant case failed to disclose any facts which contradicted those made by applicant, nor did they reveal anything that would lead defendant to believe applicant's statements were untrue. In such circumstances it was held in the cited cases that defendant did not thereby preclude itself from relying upon the truth of applicant's statements and warranties. In both instances applicants were held to be bound by statements made in the application upon which the certificates of insurance were issued. We conclude that the same rule should be applied in this case. The reasons for the rule are fully stated in the cited cases and it is unnecessary for us to restate them.

Defendant tendered to plaintiff prior to the institution of this suit all premiums paid since the issuance of the certificate and kept the tender good at the trial. As we view the facts involved, this was the extent of its liability. The trial court's judgment was against plaintiff, and under the authorities cited, as well as those collated therein, we think it was correct. All points presented have been considered and are overruled. The judgment should be affirmed and it is so ordered.