Paul and Mary **KESSLER**, Appellants,

v.

John and Alison **FANNING**, Appellees.

No. 2–96–313–CV.

Court of Appeals of Texas, Fort Worth.

Sept. 18, 1997.

David R. Casey, Hurst, for Appellants.

Richard A. Valdes, Dallas, for Appellees.

Before CAYCE, C.J., and DAUPHINOT and BRIGHAM, JJ.

## OPINION

BRIGHAM, Justice.

Appellees John and Alison Fanning sued Appellants Paul and Mary Kessler for alleged misrepresentations regarding the condition of a house that the Kesslers sold to the Fannings. A jury found that the Kesslers violated provisions of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA) by engaging in a "false, misleading, or deceptive act or practice that was a producing cause of damages" to the Fannings. See TEX. BUS. & COM.CODE ANN. §§ 17.41–.63 (Vernon 1987 & Supp.1997). The trial court accordingly entered judgment for the Fannings.

On appeal, the Kesslers assert in eight points that the alleged misrepresentation was an expression of opinion rather than a statement of fact, that any producing causal connection had been broken, that the evidence is factually insufficient, and that the trial court erred by overruling their objections to Special Question No. 1 in the jury charge and objections to the introduction of photographs and a videotape. We affirm.

## I. BACKGROUND

The Fannings moved to Texas from Illinois and entered negotiations with the Kesslers to purchase a home in Bedford, Texas. After visiting the house on several occasions and having the house inspected by a professional inspector, the Fannings purchased the home from the Kesslers. It rained during the inspection, but Mr. Fanning was not made aware of, nor did he observe, any drainage problems on the property before moving in. He testified that the inspection did not include the yard or its drainage because that was not a concern at that time.

Mr. Fanning said that he saw standing water on the property almost immediately after moving in. Mrs. Fanning noticed water "ponding" or collecting on a side of the yard as soon as it rained after they moved into the home. She called Mr. Kessler about the problem, and he acknowledged that he was aware of it. Mr. Fanning testified that Mr. Kessler insisted it was not a problem in a later telephone conversation.

The Fannings sued the Kesslers, claiming that the Kesslers made misrepresentations and omissions about the drainage and condition of their home to induce the Fannings to buy it. The Fannings further claimed that they would not have bought the house, or would have had a more specialized inspection of the property, if the drainage problems had been disclosed to them prior to the purchase. They initially alleged breach of warranty, breach of contract, and DTPA violations against the Kesslers. The charge, however, contained only one issue for submission to the jury, that of violations of the DTPA.

## II. THE MISREPRESENTATION

The Fannings specifically alleged that the Kesslers misrepresented the condition of the property's water drainage and previous structural repairs through statements and omissions during the sale. In a "Property Condition Disclosure Statement," the Kesslers checked "no" in answer to two questions regarding whether they were aware of any improper drainage or previous structure repair on the property. The Fannings also complained of the Kesslers' alleged failure to disclose information when asked by the Fannings' real estate agent if Mr. Kessler had anything to tell the Fannings about the house or the property.

■ A plaintiff may bring a DTPA action on these grounds if: 1) the plaintiff is a consumer, 2) the defendant engaged in false, misleading, or deceptive acts, and 3) these acts constituted a producing cause of the consumer's damages. *See* TEX. BUS. & COM. CODE ANN. § 17.50(a)(1) (Vernon Supp. 1997);[1] *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995); *Wheaton Van Lines, Inc. v. Mason*, 925 S.W.2d 722, 727 (Tex.App.—Fort Worth 1996, writ denied). To prevail on a DTPA claim, a consumer must establish that each defendant violated a specific provision of the Act and that such violation was a producing cause of injury. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex.1996). Provisions in section 17.46(b) of the DTPA set forth

conduct constituting a "false, misleading, or deceptive act or practice" and subsections (b)(5), (7), (13), and (23) were specifically included in the jury charge in this case.

### A. Producing Cause

The Kesslers claim, in their fourth point, that the trial court erred in entering the judgment because the producing causal connection had been broken. They assert that the evidence fails to show that any statement or failure to disclose by them was a producing cause of the Fannings' damages. Specifically, they contend the Fannings broke any producing causal connection when they obtained their own professional inspection of the property and relied on the resulting report in their purchase of the home. The Fannings reply that there may be more than one producing cause, and that the opportunity to inspect the property does not constitute an affirmative defense to fraudulent representations.

■ In order to recover under the DTPA, it is necessary to prove that any deceptive act or practice was a producing cause of damages. *See Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985); *Camden Mach. & Tool, Inc. v. Cascade Co.*, 870 S.W.2d 304, 311 (Tex.App.—Fort Worth 1993, no writ). A showing that a defendant's deceptive act or omission was a producing cause of a plaintiff's damages requires proof of (1) actual causation in fact, (2) that but for the defendant's conduct the plaintiff's injury would not have occurred, and (3) that the act or omission was such a substantial factor in bringing about injury that liability should be imposed. *See Prudential Ins. v. Jefferson Assocs.*, 896 S.W.2d 156, 161 (Tex.1995). For DTPA claims, a plaintiff need only show producing cause and not that the harm was foreseeable. *See Doe*, 907 S.W.2d at 481. A producing cause has been defined as "an efficient, exciting, or contributing cause, which in a natural sequence, produced injuries or damages complained of, if any." *Rourke v. Garza*, 530 S.W.2d 794, 801 (Tex. 1975); *see also Haynes & Boone v. Bowser*

---

1. Section 17.50(a) was amended in 1995 by adding a requirement that a consumer prove he relied on the false, misleading, or deceptive practice to his detriment. TEX. BUS. & COM CODE ANN. § 17.50 (Vernon Supp.1997).

*Bouldin, Ltd.*, 896 S.W.2d 179, 182 (Tex. 1995). There must be an "unbroken causal connection" between the act or omission and the injury. *Doe,* 907 S.W.2d at 481.

The Fannings hired Complete Home Inspection Service to inspect the property and report on its condition at the time of the transaction. The inspection of the house, however, did not include the surrounding yard and its drainage. Mr. Fanning testified that if they had known of the problem with the yard not draining, they would not have purchased the property or at least would have hired an engineer or expert to inspect the problem. Mrs. Fanning also testified that they would not have purchased the house if they had known of the problem. This is sufficient to show that but for the misrepresentation or failure to disclose information of the drainage problem, the Fannings would not have purchased the property and that the failure to disclose was a substantial factor in the Fannings' decision to buy the house, which led to their injury.

The Kesslers assert that the Fannings' reliance on the inspection was an intervening factor that broke the causal connection. The Fannings, however, relied on several factors, including the Kesslers' honesty in presenting the house and its property.

Additionally, the jury was charged on the law in Texas that there may be more than one producing cause. *See Haynes & Boone,* 896 S.W.2d at 182; *Rourke,* 530 S.W.2d at 801. The evidence establishes that the Kesslers' misrepresentation or failure to disclose was a producing cause, if not the sole producing cause.

The possibility of an independent investigation that might have uncovered fraud does not preclude recovery of damages for fraudulent representations, *see Koral Industries v. Security–Connecticut Life Ins.,* 802 S.W.2d 650, 651 (Tex.1990), and the Fannings' inspection was not a defense to this misrepresentation claim. We overrule the Kesslers' fourth point.

### B. Fact or Opinion

The Kesslers counter the misrepresentation allegations by claiming in their first three points that any representation was an expression of opinion and not a statement of fact. They contend that the trial court thus erred when it entered the judgment and denied their motion for judgment non obstante veredicto, their alternative motion to disregard jury findings, and their motion for new trial.

The property disclosure form provided by the Kesslers stated that it was "not a substitute for any inspections or warranties" and that it contained "representations made by the owner(s) based on owner's knowledge." The Kesslers claim this shows that the representations were of opinion rather than fact because they were based on the owner's (the Kesslers') knowledge rather than any inspection or other source. The Fannings assert that the Kesslers fail to apply the standards for determining the difference between expression of opinion, or mere "puffing," and actionable misrepresentations. They also assert that the jury's finding of a DTPA violation rests on the failure to disclose information as well as affirmative misrepresentations and that the Kesslers' acts *or* omissions amounted to actionable misrepresentation.

The DTPA does not specifically mention opinion or "puffing" as a defense. *See Humble Nat'l Bank v. DCV, Inc.,* 933 S.W.2d 224, 229 (Tex.App.—Houston [14th Dist.] 1996, writ denied). The Texas Supreme Court, however, has stated that misrepresentations are actionable under the DTPA "so long as they are of a material fact and not merely 'puffing' or opinion." *Pennington v. Singleton,* 606 S.W.2d 682, 687 (Tex.1980). Although a "puffing" or "opinion" defense often pertains to warranty cases, courts have looked to *Pennington* and allowed an "opinion" defense in misrepresentation claims brought under section 17.46(b)(5) and (7) of the DTPA. *See Humble Nat'l Bank,* 933 S.W.2d at 229–30; *Hedley Feedlot, Inc. v. Weatherly Trust,* 855 S.W.2d 826, 838–39 (Tex.App.—Amarillo 1993, writ denied) (op. on reh'g); *Parks v. U.S. Home Corp.,* 652 S.W.2d 479, 484 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd w.o.j.).

An actionable misrepresentation may be broad or general and need not regard specific information. *See Pennington,* 606

S.W.2d at 687. Courts have generally considered three factors in determining whether a statement is opinion or actionable misrepresentation: 1) the specificity versus vagueness of the statement, 2) the comparative knowledge of the buyer and the seller, and 3) whether the representation pertains to a past or current event or condition versus a future event or condition. *See Humble Nat'l Bank,* 933 S.W.2d at 230; *Hedley Feedlot,* 855 S.W.2d at 839.

■ We do not find that the terms "improper drainage" or "previous structural repair" are so vague, unsusceptible to comparably more knowledge on the part of the seller, and pertaining to a future event or condition as to be mere opinion or puffing. They clearly pertain to a past or current condition of the property at the time of the sale, and in this case the Kesslers owned and had lived in the house they were selling, which provided them with occasion to know more about drainage problems and past structural repairs than the Fannings. The record shows that standing water would not drain from the yard after periods of heavy rains, a condition that a one-time inspection may not reveal without notice of the problem. Furthermore, the term "improper drainage" has been considered a description of a condition and not merely an opinion, although no detailed definition was provided. *See Wade v. Jackson County,* 547 S.W.2d 371, 375–76 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.) (noting that water standing on a tract of land for four or five days after a heavy rain causes damage to the land). We overrule points one, two, and three.

### C. Sufficiency of Evidence

In their fifth point, the Kesslers assert that the trial court erred in denying their motion for new trial because the evidence is factually insufficient to support the jury's finding that the Kesslers engaged in a false, misleading, or deceptive act or practice that was a producing cause of damages to the Fannings. In their sixth point, they further protest the trial court's overruling of their objection to Special Question No. 1 in the jury charge, based on factual insufficiency of the evidence. Special Question No. 1 contained the following:

Do you find from a preponderance of the evidence that Paul and Mary Kessler, or either of them, engaged in any false, misleading, or deceptive act or practice that was a producing cause of damages to John and Alison Fanning?

"False, misleading, or deceptive act or practice" means any of the following:

— Representing that the property had or would have characteristics that it did not have; or

— Representing that the property was or would be of a particular quality if it is of another; or

— Knowingly making false or misleading statements of fact concerning the need for repair services; or

— Failing to disclose information about the property that was known at the time of the transaction with the intention to induce another into a transaction into which the consumer would not have entered had the information been disclosed.

Answer "Yes" or "No".

This jury submission consisted of relevant portions of section 17.46(b) of the DTPA, which presents a laundry list of deceptive trade practices that are unlawful under the statute. *See* TEX. BUS. & COM.CODE ANN. § 17.46(b)(5), (7), (13), (23) (Vernon Supp. 1997). The jury answered "Yes" to this question, and the Kesslers assert that the evidence is factually insufficient to support their answer and the resulting judgment because the Fannings failed to show that improper drainage existed at the time of the transaction or that the Kesslers knew of or misrepresented such improper drainage.

The Fannings respond that the judgment rests both on misrepresentations and on the Kesslers' alleged failure to disclose material information. They counter that the verdict is therefore supported by sufficient evidence of a violation of the DTPA.

■ The Kesslers' motion for new trial was based on a claim of insufficient evidence. A trial court has wide discretion in granting a new trial, and we will not disturb this

discretion on appeal absent a showing of manifest abuse of discretion. *See Champion Int'l Corp. v. Twelfth Court of Appeals,* 762 S.W.2d 898, 899 (Tex.1988) (orig.proceeding); *Gilgon, Inc. v. Hart,* 893 S.W.2d 562, 569 (Tex.App.—Corpus Christi 1994, writ denied). To determine whether a trial court abused its discretion, we must decide "whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). Under an abuse of discretion standard, legal and factual insufficiency are relevant factors in assessing whether the trial court abused its discretion. *See Beaumont Bank v. Buller,* 806 S.W.2d 223, 226 (Tex.1991); *D.R. v. J.A.R.,* 894 S.W.2d 91, 95 (Tex.App.—Fort Worth 1995, writ denied) (op. on reh'g); *In re Driver,* 895 S.W.2d 875, 877 (Tex.App.—Texarkana 1995, no writ); *Mai v. Mai,* 853 S.W.2d 615, 618 (Tex.App.—Houston [1st Dist.] 1993, no writ). In reviewing an insufficiency of the evidence challenge, we are required to consider all of the evidence in the case. *See Jaffe Aircraft Corp. v. Carr,* 867 S.W.2d 27, 29 (Tex.1993). A fact finding should be set aside only if the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming as to be clearly wrong and manifestly unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

As listed previously, the elements of a DTPA action are: 1) the plaintiff is a consumer, 2) the defendant engaged in false, misleading, or deceptive acts, and 3) these acts constituted a producing cause of the consumer's damages. *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(1). We have previously determined that the evidence shows the Kesslers' acts or omissions constituted a producing cause. The provisions in section 17.46(b) of the DTPA set forth conduct constituting a "false, misleading, or deceptive act or practice," and subsections (b)(5), (7), (13), and (23) were specifically included in the jury charge in this case. The Fannings, who were consumers in a transaction to buy a home, were also required to prove that the Kesslers violated at least one of the relevant subsections in section 17.46(b) through affirmative misrepresentations or failure to disclose information.

Under the DTPA, a seller is liable for affirmative misrepresentations, despite a lack of notice or falsity, because the law imposes a duty on the seller to know whether an affirmative statement is true. *See Camden Mach. & Tool,* 870 S.W.2d at 311; *Henry S. Miller Co. v. Bynum,* 797 S.W.2d 51, 55 (Tex.App.—Houston [1st Dist.] 1990), *aff'd,* 836 S.W.2d 160 (Tex.1992). No such duty arises when the seller fails to reveal information about which he does not know, rather than making representations. *See Robinson v. Preston Chrysler–Plymouth, Inc.,* 633 S.W.2d 500, 502 (Tex.1982); *Smith v. Herco, Inc.,* 900 S.W.2d 852, 859 (Tex. App.—Corpus Christi 1995, writ denied). To prove a DTPA action for failure to disclose, plaintiffs must show the following:

1. A failure to disclose information concerning goods or services;

2. Which was known at the time of the transaction;

3. Which was intended to induce them into a transaction; and

4. That they would not have entered into the transaction if the information had been disclosed.

*See* Tex. Bus. & Com.Code Ann. § 17.46(b)(23); *O'Hern v. Hogard,* 841 S.W.2d 135, 136 (Tex.App.—Houston [14th Dist.] 1992, no writ). There is no duty of disclosure under the DTPA if a defendant fails to disclose material facts it merely *should have* known. *Doe,* 907 S.W.2d at 479.

The Kesslers contend that they were not aware of any improper drainage or previous structural repair. However, the following testimony was presented at trial:

- John Fanning testified that almost immediately after they moved into the house they experienced problems with improper drainage.

- Alison Fanning testified that twice in her presence, the Fannings' real estate agent asked Paul Kessler if he had anything to tell them about the house and he said, "no." She also testified that Paul Kessler admitted to her that the house had a problem with improper drainage and he was aware of it.

- Bert Barron of RamJack examined the property approximately sixteen months after the Fannings moved in and concluded that the improper drainage had existed for at least three years before his examination.
- Paul Littlejohn, a hostile witness to the Fannings, testified that he was the next-door neighbor to the property and that he had observed that the area in question would not drain when the other areas would.

We have reviewed the evidence in this case and have determined that the trial court did not abuse its discretion in denying the motion for new trial and submitting Special Question No. 1 to the jury.[2] The record contains sufficient evidence that the Kesslers violated at least one of the relevant subsections of DTPA section 17.46(b) through either affirmative misrepresentations or failure to disclose information. We overrule their fifth and sixth points.

## III. ADMISSION OF PHOTOGRAPHS AND VIDEOTAPE

In their seventh and eighth points, the Kesslers contend that the trial court erred by overruling their objections to the introduction of a videotape and photographs offered by the Fannings.

"The admissibility of a photograph is conditioned upon its identification by a witness as an accurate portrayal of the facts, and on verification by that witness or a person with knowledge that the photograph is a correct representation of such facts." *Davidson v. Great Nat'l Life Ins. Co.*, 737 S.W.2d 312, 314–15 (Tex.1987). A change in the scene or object photographed will not prevent an earlier photograph from being admissible "if the changes are explained such that the photograph will be helpful to the jury in understanding the nature of the conditions at the time of the controversy." *Cheek v. Zalta*, 693 S.W.2d 632, 635 (Tex. App.—Houston [14th Dist.] 1985, no writ). The predicate for admissibility need not be laid by the photographer, the person photographed, or even a person who was present when the photograph was taken, but any witness who observed the object or scene depicted in the photograph may lay the predicate. *See Davidson*, 737 S.W.2d at 314–15; *Briones v. Levine's Dept. Store, Inc.*, 435 S.W.2d 876, 880 (Tex.Civ.App.—Austin 1968), *aff'd*, 446 S.W.2d 7 (Tex.1969). The admission of a videotape follows the same conditions. We review a trial court's admission of photographs and videos under an abuse of discretion standard. *See Reichhold Chemicals, Inc. v. Puremco Mfg. Co.*, 854 S.W.2d 240, 248 (Tex.App.—Waco 1993, writ denied). We determine "whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *Worford*, 801 S.W.2d at 109.

The Kesslers objected to the videotape on the grounds that the sponsoring witness, John Fanning, did not record all of the videotape and that he could not distinguish between the portions he recorded and the portions his wife recorded. They also objected that the photos were taken after drainage repair work had been completed. As to the photographs, the Kesslers objected that they did not show the property as it appeared on the date of the sale. The objections made by the Kesslers went to the weight of the evidence and not the admissibility of the videotape and photographs. *See Cheek*, 693 S.W.2d at 635. The change in the property between the date of sale and the time the pictures were taken was information that was suitable for cross-examination and presented a fact-question for the jury. *See id.* Therefore, the trial court's decision to admit the photographs and videotape was not an abuse of discretion, and the Kesslers' seventh and eighth points are overruled.

## IV. CONCLUSION

Having overruled each of the Kesslers' points, the judgment of the trial court is affirmed.

---

**2.** Because we find that the evidence supports the jury's finding in relation to the drainage problems of the property, we do not need to address the evidence surrounding the alleged previous structural repairs.