NO. 07-10-0397-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 24, 2011

_____

CHESAPEAKE EXPLORATION, L.L.C., APPELLANT

V.

DALLAS AREA PARKINSONISM SOCIETY, INC., AND
AMERICAN CANCER SOCIETY HIGH PLAINS DIVISION,
INC., APPELLEES

_____

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY;

NO. 153-241012-09; HONORABLE KEN CURRY, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Chesapeake Exploration, L.L.C. ("Chesapeake"), appeals from entry

of summary judgment in favor of Appellees, Dallas Area Parkinsonism Society, L.L.C.

("DAPS") and American Cancer Society High Plains Division, Inc. ("ACS"), on

Chesapeake's claim to recover bonus money paid to DAPS and ACS (together the

"Charities") in return for two oil and gas leases. In support, Chesapeake asserts the

trial court erred in granting summary judgment in favor of DAPS and ACS because (1) Chesapeake's rescission and restitution claims are not barred as a matter of law under the theory that Chesapeake bargained for and received a lease that operates as a quitclaim deed; and disputed issues of material fact exist whether: (2) the parties shared a mistaken belief that DAPS and ACS held title to the mineral estate which materially affected the oil and gas transaction; (3) there is some evidence of a unilateral mistake; (4) some or all of the bonus monies in equity and good conscience belong to Chesapeake; (5) the Charities made negligent misrepresentations to Chesapeake; and (6) some evidence exists supporting Chesapeake's claim for breach of the covenant of seisin.   We reverse and remand for further proceedings consistent with this opinion.

**Background**

The testamentary bequest of Clere Pearle Geneske provided for the distribution of her residuary estate one-half each to DAPS and ACS.  In April 2006, at the request of ACS's counsel, Bill Roberts,[1] Frank Finn and Bank One Trust Company, N.A., co-independent executors of Ms. Geneske's estate, conveyed to DAPS and ACS all of the estate's "right, title and interest" to two tracts of land totaling approximately 83 acres in Tarrant County, Texas, (the "Property"). The conveyance instrument, entitled *Conveyance and Assignment Without Warranty,* was then filed in the Tarrant County

---

[1]Roberts was the Associate Corporate Counsel in ACS's Probate and Trust Department.  After graduating from law school in 1980, he worked as an in-house landman for Getty Oil Company before becoming self-employed in 1984 as a landman putting oil and gas deals together.  In 1986, he joined a small town practice and thereafter worked at private law firms until joining ACS.

property records.[2] At the time, DAPS and ACS believed that they were the owners of the Property and were unaware that other entities possessed superior title.

In May 2006, the Charities leased the Property to Llano Royalty, Ltd. (Llano) for purposes of oil and gas exploration, development and production. During negotiations with Llano and in subsequent negotiations with Chesapeake, Roberts referred to the Property as "our tract," "our acreage," "[ACS]'s and [DAPS]'s minerals," "our minerals," and "our land." When the Llano lease expired by its terms, Chesapeake sought to lease the Property from the Charities. Chesapeake contracted with PFM, L.L.C. ("PFM"), an independent lease broker, to negotiate and submit lease proposals to Chesapeake for approval. Doug McCutchin, PFM's landman, was responsible for negotiating and submitting lease proposals for the Property to Chesapeake. It is undisputed that Roberts was the only person who communicated with McCutchin on behalf of both DAPS and ACS.

In a series of e-mails prior to execution of any lease between Chesapeake, DAPS and ACS, Roberts indicated that he could "not warrant title, except that it is unencumbered." While Chesapeake wanted a general warranty, Roberts made a

---

[2]This instrument, in pertinent part, stated as follows:

> NOW, THEREFORE, Grantor, for and in consideration of Ten and no/100 Dollars and other valuable consideration, does hereby GRANT, SELL, CONVEY, ASSIGN and DELIVER to American Cancer Society and to Dallas Area Parkinsonism Society (together herein called "Grantee") in equal undivided one-half interests each of the following:
>
> A.     All Grantor's right, title and interest in the Property.
>
> *     *     *
>
> TO HAVE AND TO HOLD the Assigned Interests unto Grantee, and their successors and assigns forever . . . and Grantor makes no warranty of title, express or implied, statutory or otherwise.

counterproposal of a special warranty and the parties agreed to a provision wherein the Charities agreed to "bind themselves . . . and assigns to warrant and forever defend all and singular the said property unto said Lessee, herein, . . . against every person whomsoever claiming or to claim the same or any part thereof, by, through and under [Lessor], but not otherwise."

Roberts then indicated by e-mail that "[t]he only other thing we have not discussed is method of payment" and suggested Chesapeake pay the bonus money by check.  He further suggested that, after Chesapeake was "comfortable with the title," they could meet and Roberts would exchange the original oil and gas lease for the bonus money.  McCutchin countered that Chesapeake would rather pay using a 30 day draft because it would give them more time to run the title back.  Roberts countered that the Charities preferred a check and suggested:  "How about if you (sic) we send you the lease, and you agree in writing to pay us within 30 days after clearing title?"  McCutchin agreed to "pay within 30 days of clearing title," and asked Roberts if he wanted "a letter acknowledging this agreement?"  On Chesapeake's behalf, PFM subsequently performed a title search of the Tarrant County property records which revealed the conveyance of the Property from Genseke's estate to the Charities.

In late 2007, Chesapeake executed two oil and gas leases with DAPS and ACS pursuant to the terms negotiated between Roberts and McCutchin (the Leases).  The Leases' terms are virtually identical and state as folllows:  "In consideration of a cash bonus in hand paid and covenants contained herein, Lessor hereby grants, leases and lets exclusively to Lessee the following described land, hereinafter, called the Leased

4

premises . . . for the purpose of exploring for, developing, producing and marketing oil and gas . . . ."

Paragraph 23 of the addendums to the Leases stated as follows:

> [Lessor] does hereby bind themselves, their heirs, executors, administrators, successors, and assigns to warrant and forever defend all and singular the said property unto the said Lessee, herein, their heirs, successors, and assigns against every person whomsoever claiming the same or any part thereof, by, through and under [Lessor], but not otherwise.

After execution of the Leases and payment of $498,000 in bonuses ($249,000 each to DAPS and ACS), Chesapeake recorded a memorandum of the Leases in the real property records of Tarrant County and prepared to develop the Property. As part of these preparations, Chesapeake subsequently obtained a detailed drilling title opinion on the Property and discovered that neither DAPS nor ACS owned any interest in the Property. Instead, the chain of title revealed the Property belonged to the Children's Medical Foundation of Dallas and the Dallas Methodist Hospitals Foundation, Inc., through previous conveyances. When Chesapeake sought to obtain a refund of the Lease bonuses, the Charities refused to repay the money. Thereafter, Chesapeake filed suit and asserted actions for breach of the covenant of seisin, rescission of the Leases due to mutual mistake, rescission of the Leases due to Chesapeake 's unilateral mistake, money had and received/unjust enrichment and negligent misrepresentation.

In April 2010, the Charities filed a traditional motion for summary judgment asserting that all Chesapeake's theories "fail because [Chesapeake] accepted leases from DAPS and ACS containing special warranties." The Charities asserted the special warranty provision in the Leases did not warranty title but warranted "that [the Charities]

5

[had] taken no action to encumber the title, or otherwise divest itself of any title it may have."  In July 2010, the Charities filed a no-evidence motion for summary judgment on Chesapeake's action for negligent misrepresentation asserting that Chesapeake did not rely on any representations by DAPS or ACS regarding title to the Property but conducted an independent investigation of the Property's title and bargained for the right to check title before paying bonus money.  The Charities also asserted they did not proximately cause any injury to Chesapeake because the parties bargained for and received a conveyance that is the functional equivalent of a quitclaim deed.

In two orders, the trial court granted summary judgments in favor of the Charities on all Chesapeake's causes of action and issued a final judgment wherein it ordered that Chesapeake take nothing and taxed costs against Chesapeake.  This appeal followed.

**Standard of Review**

Because the propriety of a summary judgment is a question of law, we review the trial court's granting of a traditional or no-evidence summary judgment *de novo. Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005).  While viewing the evidence in the light most favorable to non-movants, we resolve all doubts and indulge every reasonable inference against movants. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003).

For a party to prevail on a traditional motion for summary judgment, that party must conclusively establish the absence of any genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); *Browning*

6

*v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). A defensive motion for summary judgment should be granted if the defendant disproves at least one essential element of each of the plaintiff's causes of action, or conclusively establishes all the elements of an affirmative defense as a matter of law. *Shaw v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001).

For a party to prevail on a no-evidence motion for summary judgment, the moving party must establish that there is no evidence of one or more essential elements of the claim or claims for which the non-movant would bear the burden of proof at trial. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch Inc. v. Chapman,* 118 S.W.3d 742, 750-51 (Tex. 2003), *cert. denied*, 541 U.S. 1030, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004). When the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, more than a scintilla of evidence exists. *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997).

Moreover, where, as here, the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm summary judgment if any of the summary judgment grounds are meritorious. *Western Investments, Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). *See Texas Workers' Compensation Commission v. Patient Advocates of Texas*, 136 S.W.3d 643, 648 (Tex. 2004).

**Quitclaim vs. Special Warranty**

The traditional motion for summary judgment filed by the Charities in the trial court asserted a single ground for defeating all Chesapeake's theories for recovery of the Leases' bonuses, i.e., that the Leases, although containing a special warranty, did not warrant title but instead operated as a quitclaim deed. The Charities asserted the special warranty provision "simply warrant[ed] that *if* the grantor has title, he has done nothing to encumber or otherwise divest himself of title." (Emphasis added). Chesapeake counters that the Leases' provisions taken as whole represent a special warranty that purports to convey property, not a quitclaim purporting to convey the right, title, and interest, if any, of the Charities in any given property.

A deed that is unambiguous is construed as a matter of law. *J. Hiram Moore, Ltd. v. Greer,* 172 S.W.3d 609, 613 (Tex. 2005). Texas law has long recognized that an oil and gas lease is not a "lease" in the traditional sense of a lease of the surface of real property. *Natural Gas Pipeline Co. of America v. Pool*, 124 S.W.3d 188, 192 (Tex. 2003). Rather, "[i]n a typical oil and gas lease, the lessor is a grantor and grants a fee simple determinable interest to the lessee, who is actually a grantee. *Id.* (citing *W. T. Waggoner Estate v. Sigler Oil Co.*, 118 Tex. 509, 19 S.W.2d 27, 28-29 (Tex. 1929)).[3] As a result, the lessee/grantee acquires ownership of all the minerals in place that the lessor/grantor owned and purported to lease. *Id.*

---

[3]The lessee/grantee's interest is "determinable" because it may terminate and revert entirely to the lessor/grantor upon occurrence of events that the lease specifies will cause termination of the estate. *Natural Gas Pipeline Co. of America*, 124 S.W.3d at 192 (citing *W. T. Waggoner Estate,* 19 S.W.2d at 28.)

8

A warranty deed to land conveys property while a quitclaim deed conveys the grantor's rights in that property, if any. *Geodyne Energy Income Production v. The Newton Corporation*, 161 S.W.3d 482, 485 (Tex. 2005) (citing *Cook v. Smith*, 107 Tex. 119, 174 S.W. 1094, 1095 (Tex. 1915)). In deciding whether an instrument is a quitclaim deed, courts look to whether the language of the instrument, taken as a whole, conveyed the property itself or merely the grantor's rights. *Id.; Enerlex, Inc. v. Amerada Hess, Inc.,* 302 S.W.3d 351, 354 (Tex.App.--Eastland 2009, no pet.). What is important and controlling is not whether the grantor actually owned the title to the land conveyed, but whether the deed purported to convey the property. *Enerlex,* 302 S.W.3d at 355 (citing *Am. Republics Corp. v. Houston Oil Co. of Texas*, 173 F.2d 728, 734 (5th Cir. 1949)); *Cook*, 174 S.W. at 1096. Further, "[t]he language of the conveyance will be construed most strongly against the grantor and in favor of the grantee, so as to convey the greatest estate which the language used can be construed to pass." *Roswurm v. Sinclair Prairie Oil Co.*, 181 S.W.2d 736, 744 (Tex.Civ.App.--Fort Worth 1943, writ ref'd w.o.m.).

The Leases herein stated that "[i]n consideration of the cash bonus in hand paid and covenants contained herein, Lessor hereby grants, leases and lets exclusively to Lessee the following described land . . . for the purposes of exploring for, developing, producing and marketing oil and gas . . . ." This phrase is followed by a detailed description of the Leased property and represents a present grant of a determinable fee interest in land. *Obelgoner v. Obelgoner*, 526 S.W.2d 790, 792 (Tex.Civ.App.--Corpus Christi 1975, writ ref'd n.r.e.) (the phrase "hereby grants, leases and lets exclusively unto Lessee . . . indicates a *present* grant"). *See Parker v. Standard Oil Co. of Kansas*,

9

250 S.W.2d 671, 681 (Tex.Civ.App.--Galveston 1952, writ ref'd n.r.e.) ("A mineral lease is the conveyance of a determinable fee interest in land" and "[t]he intention of the parties to a mineral lease is that minerals shall be produced from the land lease, and shared as therein specified.")

Both in their briefs on appeal and in their pleadings before the trial court, the parties describe the warranty clause to the Leases as a special warranty, i.e., that DAPS and ACS "warrant and forever defend all and singular the said property unto the said Lessee, herein, . . . against every person whomsoever claiming the same or any part thereof, by, through and under [Lessor], but not otherwise." As such, taken as a whole, the language of both the granting and warranty clauses supports a conclusion the Leases purport to convey title to the Property itself, not merely quitclaim the Charities rights therein. *See Whitehead v. State*, 724 S.W.2d 111, 112 (Tex.App.--Beaumont 1987, writ ref'd) (deed containing the qualifying words "by, through or under me, but not otherwise" not a quitclaim deed but a special warranty deed); *Van Cleave v. Bell Oil & Gas Co.*, 102 S.W.2d 1103, 1105 (Tex.Civ.App.--Fort Worth 1937, writ dism'd) (warranty clause that contains the qualifying words "by, through, or under me, but not otherwise," is not a quitclaim deed); *Huling v. Moore,* 194 S.W. 188, 192 (Tex.Civ.App.--San Antonio 1917, writ ref'd) (special warranty deed was not a quitclaim deed, but conveyed the land itself). As a result, Chesapeake's breach of the covenant of seisin, money had and received, unjust enrichment, recession and restitution claims are not barred as a matter of law under the theory that Chesapeake bargained for and received a quitclaim.

Chesapeake's first issue is sustained. Having sustained Chesapeake's first issue, issues two, three, four and six are pretermitted.

## Negligent Misrepresentation

In their no-evidence motion for summary judgment, the Charities assert that Chesapeake cannot prevail because it cannot show justifiable reliance or causation[4] because it conducted an independent investigation of the property's title and bargained for the right to check the property's title before paying any bonus money. *See King Ranch, Inc.,* 118 S.W.3d at 751 (no-evidence summary judgment sustained when evidence conclusively establishes the opposite of a vital fact). The Charities also assert they made no representations regarding title to the property.

Viewing the evidence in a light most favorable to Chesapeake while resolving all doubts and indulging every inference against the Charities, we find that the Charities have failed to establish as a matter of law the opposite of a fact vital to Chesapeake's cause of action, to-wit: justifiable reliance. If anything, the results of Chesapeake's preliminary independent title investigation reinforced the information that was being provided by the Charities, i.e., that they held title to the Property. Where an independent investigation "fails to disclose any facts which contradicted those made by applicant, nor did they reveal anything that would lead defendant to believe applicant's statements were untrue . . . the defendant [does] not preclude itself from relying upon the truth of applicant's statements and warranties." *Gaston v. Woodmen of World Life*

---

[4]The elements of negligent misrepresentation are: (1) the representation is made by the defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

11

*Ins. Soc.,* 167 S.W.2d 263, 265 (Tex.Civ.App.--Fort Worth 1942, writ dism'd); *Woodmen of the World Life Ins. Co. v. Davenport*, 159 S.W.2d 913, 918 (Tex.Civ.App.—Eastland 1941, no writ). "The mere fact that one makes a personal investigation, or consults with others, or has other sources of information open to him, does not necessarily show that he relied on such personal investigation, or the information gained therefrom, or through other sources." *Durham v. Wichita Mill & Elevator Co.,* 202 S.W. 138, 142 (Tex.Civ.App.--Fort Worth 1918, writ ref'd). *See Kessler v. Fannig*, 953 S.W.2d 515, 519 (Tex.App.--Fort Worth 1997, no writ) ("possibility of an independent investigation that might have uncovered fraud does not preclude recovery for fraudulent representations" and "the [plaintiff's] inspection was not a defense to this misrepresentation claim"); *Carruth v. Allen*, 368 S.W.2d 672, 679 (Tex.Civ.App.--Austin 1963, no writ) ("An independent investigation of matters that eventually culminate in a contract does not as a matter of law defeat a right to rely on allegedly false representations.") *Compare Camden Machine & Tool, Inc. v. Cascade Company*, 870 S.W.2d 304, 311 (Tex.App.--Fort Worth 1993, no writ) ("when a person makes his own investigation of the facts, *and knows the representations are false*, he cannot, as a matter of law, be said to have relied upon the misrepresentations of another") (emphasis added). "The material question is, Did [Chesapeake] . . . rely on false statements or misrepresentations made by the [Charities]?" *Durham*, 202 S.W. at 142.[5]

---

[5]The Charities cite *Bartlett v. Schmidt,* 33 S.W.3d 35, 38 (Tex.App.--Corpus Christi 2000, pet. denied) for the proposition that any independent investigation by the buyer negates reliance on the seller's representations. This proposition overstates the holding of the *Bartlett* case. *See Pleasant v. Bradford*, 260 S.W.3d 546, 554 n.3 (Tex.App.--Austin 2008, pet. denied) ("Of course, the [*Bartlett*] court was not stating that any evidence of an investigation defeats an allegation of reliance . . . .") In *Barlett*, the court recognized that any independent investigation sufficient to negate reliance would encompass "matters covered by representations, which is sufficient to inform him of the truth." *Bartlett*, 33 S.W.3d at 38. Moreover, "[a]lthough the courts of appeals have articulated different tests for when a buyer's

In addition, an injury may have more than one producing cause, and Texas courts have found that a seller's misrepresentations can be a producing cause of a buyer's injury even when the buyer has conducted an independent investigation. *See, e.g., Kessler*, 953 S.W.2d at 519; *O'Hern v. Hogard*, 841 S.W.2d 135, 137-38 (Tex.App.--Houston [14th Dist.] 1992, no writ) (finding inspection did not constitute new and independent cause of buyer's damages and determining proper inquiry is whether the seller's act was the producing cause of buyer's damages). The rationale behind doing so is that, although the buyer may have conducted an independent investigation, he may have also relied on representations by the seller and seller's agent. *Kessler,* 953 S.W.2d at 519. Thus, without evidence to show that a buyer relied exclusively on his independent report or had actual and complete knowledge of the alleged defect, false information provided by the seller might have been a producing cause of a buyer's damages. *Blackstock v. Dudley*, 12 S.W.3d 131, 133-34 (Tex.App.--Amarillo 1999, no pet.) The Charities' summary judgment evidence fails to establish as a matter of law the opposite of a vital fact, to-wit: that Chesapeake relied either exclusively on PFM's title search or that Chesapeake had actual and complete knowledge of the defect in the Charities' title to the property.

Regarding the Charities' representations, the statements in the record that, during negotiations, the Charities referred to the property as "[ACS]'s and [DAPS]'s

---

independent inspection will defeat causation and reliance as a matter of law; [citations omitted], the courts have consistently applied these tests such that a buyer's independent inspection precludes a showing of causation and reliance *if* it reveals to the buyer the same information that the seller allegedly failed to disclose." *Williams v. Dardenne*, No. 01-10-00492, ___ S.W.3d___, 2011 Tex. App. LEXIS 3849, at *19-21 (Tex.App.--Houston [1st Dist.] May 19, 2011, pet. filed) (collected cases cited therein) (emphasis added). As already noted, here, the results of Chesapeake's preliminary independent investigation did not reveal what the Charities allegedly failed to disclose, i.e., lack of ownership. To the contrary, the information acquired tended to bolster the Charities alleged misrepresentations.

minerals," "our minerals," and "our land," at the least, when coupled with McCutchin's affidavit wherein he states he relied on the Charities' representations as well as the Leases' granting clauses and special warranty provisions in executing the Leases, creates a fact issue whether Chesapeake reasonably relied upon those representations. In addition, our review of the e-mail exchange wherein the Charities assert Chesapeake assumed the risk of checking title and ownership of the property, when viewed in a light most favorable to Chesapeake, indicates otherwise. That is, after the parties completed their negotiations of the special warranty provision, the negotiations, at the Charities' request, turned to the method of payment--not the parties' relative contractual responsibilities regarding title to the property.

Further, we do not reach the issue raised by the Charities whether the special warranty provision, by itself, put Chesapeake on notice as to any doubts regarding the Property's title. This argument was not made to the trial court in either motion for summary judgment. To preserve error on appeal, a party must make a timely, specific objection or motion to the trial court that states the grounds for the ruling sought with sufficient specificity and complies with the rules of evidence and procedure. *See* Tex. R. App. P. 33.1(a). If an argument is presented for the first time on appeal, it is waived. *Id. See Marine Transport Corp. v. Methodist Hospital*, 221 S.W.3d 138, 147 n.3 (Tex.App.--Houston [1st Dist.] 2006, no pet.).

That said, however even if we were to consider the cases cited by the Charities in support of the principle that a special warranty deed itself puts a party on notice of defects in the title as a matter of law; *see McIntyre v. DeLong,* 8 S.W. 622, 623 (Tex. 1888); *Rhode v. Alley,* 27 Tex. 443, 1864 Tex. LEXIS 21, at *3 (Tex. 1864); *see also*

14

*Colonial & U.S. Mortgage Co., Ltd. v. Tubbs,* 45 S.W. 623, 624 (Tex.Civ.App.--Dallas 1898, no writ), other cases indicate that, while a quitclaim deed to land conveys upon its face doubts about a grantor's interest and a buyer is necessarily put on notice as to those doubts; *South Plains Switching, Ltd. v. BNSF Railway Company,* 255 S.W.3d 690, 707 (Tex.App.--Amarillo 2008, no pet.), a special warranty deed does not, of itself, carry notice of defects in title*. Richardson v. Levi*, 67 Tex. 359, 3 S.W. 444, 447 (1887) ("On its face, [a special warranty deed] possesses an indefeasible title, and gives no notice that there may be some secret claim which may defeat it."); *Munawar v. Cadle Co.*, 2 S.W.3d 12, 16 (Tex.App.--Corpus Christi 1999, pet. denied); *Paul*, 211 S.W.2d at 356. We believe the second group of cases present the more reasoned approach because a special warranty deed conveys the land itself; *Paul,* 211 S.W.2d at 356; *Choice Acquisitions No. Two, Inc. v. Noesi,* No. 14-06-00973-CV, 2007 Tex. App. LEXIS 6218, at *15-20 (Tex.App.—Houston [14th Dist.] 2007, no pet.) (mem. op.); *Huling*, 194 S.W. at 192, and is not a quitclaim deed. *Whitehead*, 724 S.W.2d at 112; *Van Cleave*, 102 S.W.2d at 1104. Accordingly, Appellant's fifth issue is sustained.

## Conclusion

The trial court's judgment is reversed and this cause is remanded for further proceedings consistent with this opinion.


Patrick A. Pirtle
Justice


15