Thomas E. BLACKSTOCK and Kay
Blackstock, Appellants,

v.

Phil DUDLEY and Pat
Dudley, Appellees.

No. 07–99–0117–CV.

Court of Appeals of Texas,
Amarillo.

Dec. 30, 1999.

Jack McClendon, Montgomery McClendon, McClendon, McClendon Law Firm, Lubbock, for appellant.

John Steven Dwyre, John Dwyre & Associates, San Antonio, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

JOHN T. BOYD, Chief Justice.

This appeal arises from a house sale in which the sellers allegedly failed to disclose severe plumbing problems prior to the purchase. Appellees Phil and Pat Dudley (the Dudleys) filed the underlying suit against appellants Tom and Kay Blackstock (the Blackstocks), claiming various Deceptive Trade Practices Act (DTPA) violations in the sale process. Finding the Blackstocks had knowingly engaged in false, misleading, or deceptive acts or practices, the jury awarded the Dudleys $21,900 in actual damages and attorneys's fees in the amount of $15,000. In its judgment, the trial court increased the attorney fee award to $29,200, with stair-step increments in the event of appeal. We modify the trial court's judgment and, as modified, we affirm it.

In challenging the judgment, the Blackstocks contend 1) the Dudleys relied upon a home inspection which should relieve them of DTPA liability, 2) the Dudleys failed to prove all the necessary elements of their DTPA claims, 3) the trial court incorrectly calculated actual damages, 4) the trial court incorrectly calculated prejudgment interest, and 5) the trial court erred in increasing the jury's award of attorney's fees. In a cross-point, the Dudleys assert that the trial court erred by prohibiting evidence concerning both stigma value and loss on resale.

On August 25, 1986, the Dudleys purchased the Blackstock's home for $90,000. Before purchasing the home, the Dudleys inquired about the house's general condition and received a response from the Blackstocks that everything was fully operable. About two weeks after the Dud-leys moved into the house, on September 9, 1986, they awoke to a flood of sewer water throughout the house. Apparently, the flood was caused by overflow from the plumbing in the two bathrooms, as well as from the back flushing of the water softener. When Mr. Dudley called Mr. Blackstock to inform him of the problems the Dudleys were experiencing, according to the Dudleys, Blackstock merely chuckled and stated, "that's your problem now."

In the course of the next 12 months, the Dudleys continued to experience numerous floods, each time requiring the assistance of plumbers and carpet cleaners to clean up the mess. When requested to share the plumbing costs with the Dudleys, the Blackstocks refused. As a result of the refusal and the continued floods, the Dudleys filed the suit underlying this appeal against the Blackstocks and Margaret Williams Realtors, Inc. (Margaret Williams), who handled the sale. During the course of trial, the Dudleys settled with Margaret Williams. Thus, the Blackstocks are the only appellants in this appeal.

## CAUSATION

In connection with their first point of error, the Blackstocks assert that the Dudleys' reliance upon a professional home inspection serves "as a new and independent basis for the Home purchase that intervened and superseded the Appellant's [sic] alleged wrongful acts as a matter of law," thereby relieving them of any DTPA liability. In advancing this claim, they primarily rely upon *Dubow v. Dragon*, 746 S.W.2d 857 (Tex.App.—Dallas 1988, no writ). However, that case is distinguishable. In *Dubow*, the court held that the purchasers of a house had no basis for a DTPA action when prior to the purchase, the purchasers undertook a "careful inspection of the house." However, in that case, the purchaser's "careful inspection" led to the discovery of serious problems, as a result of which, the purchase price of the

house was reduced. That being so, the court concluded, the buyers had actual knowledge of the defects and had not relied upon misrepresentations by the sellers in going ahead and closing the deal. *Id.* at 860. That is not true in this case. The Dudleys had no knowledge of the plumbing problem prior to the closing of the deal and, indeed, paid a higher price than originally quoted, because of a bidding war.

Additionally, although the Dudleys hired a professional home inspector, the plumbing defects were not, and because of their nature could not have been, discovered. The Blackstocks' first point is overruled.

## INSUFFICIENCY OF THE EVIDENCE

■ The gist of the Blackstocks' second point is that there was insufficient evidence to prove that intentional misrepresentations were made, that any such representations were made knowingly, and that they acted in an unconscionable manner. While there was conflicting testimony as to what was actually said about the condition of the house, by its verdict, the jury resolved those particular conflicts in the Dudleys' favor. Thus, in that regard, the jury's findings must prevail unless they are so clearly against the great weight of the evidence as to be patently wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

■ In reviewing the Blackstocks' no-evidence challenge, we consider the evidence in a light most favorable to the Dudleys, indulging every reasonable inference in their favor. *See Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 285–86 (Tex.1998). If more than a scintilla of evidence supports the finding, it must be upheld. *See Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *Seideneck v. Cal Bayreuther Assocs.,* 451 S.W.2d 752, 755 (Tex.1970). More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people

to differ in their conclusions. *See Crye,* 907 S.W.2d at 499; *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex. 1994). In reviewing a jury verdict to determine the factual sufficiency of the evidence, we consider and weigh all the evidence and set aside the judgment only if the evidence is so factually weak, or the verdict so contrary to the overwhelming weight of the evidence as to make the judgment clearly wrong and unjust. *Cain,* 709 S.W.2d at 176; *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

Application of those standards requires that we overrule this point. Although the Blackstocks maintained throughout the trial that they knew nothing of any plumbing problems associated with their house, there was strong circumstantial evidence of knowledge on their part. The house flooded only two weeks after the closing Subsequent to the first flood, there was evidence that the Dudleys discontinued use of two bathrooms, as well as the garbage disposal and the water softener and still experienced occasional floods for months thereafter. Although the Blackstocks testified that they had regularly used the bathrooms and the garbage disposal without experiencing such floods, under the evidence, the jury could have reasonably concluded that that was unlikely.

Further, there was evidence that when the carpet was lifted after the first flood, the baseboards were rotted and the padding contained several water rings. Although Kay Blackstock testified that some of the water rings were due to a water heater leak a few years prior to the sale of the house, her testimony about the leak was contradictory, at one point describing the leak as causing "just a little [wetness] right out in the hall" and at another point described it as "in the hall and right into the den area because that's a lot of water when the hot water heater breaks." Suffice it to say that the evidence was sufficient to allow the jury to resolve the questions in favor of the Dudleys.

## CALCULATION OF ACTUAL DAMAGES

■ In their third point, the Blackstocks attack the calculation of actual damages. They make two arguments supporting this point asserting that 1) the Dudleys received a double recovery when they were awarded out-of-pocket damages and expenses, and 2) a set-off credit should have been applied to the damages recovered from the Margaret Williams settlement. Addressing the double recovery claim first, we agree that the trial court erred in awarding the Dudleys both measures of damages and hold they are only entitled to the greater of the two. We additionally agree that a set-off credit should have been applied to account for the Margaret Williams settlement.

In arriving at the total of the Dudleys' actual damage award, the trial court included the difference between the value of the home at the time of the sale and the price paid for it ($6,000), along with the Dudleys' out-of-pocket expenses that were reasonable and necessary ($5,900). It is in this regard that the Blackstocks contend the Dudleys received a double recovery.

■ It is axiomatic that Texas law does not permit a double recovery. *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 441 (Tex. 1995); *Southern County Mut. Ins. Co. v. First Bank & Trust,* 750 S.W.2d 170, 173–74 (Tex.1988). Successful DTPA plaintiffs who are entitled to actual damages for misrepresentation may elect to receive either out-of-pocket damages or benefit of the bargain damages. *Bankston Nissan, Inc. v. Walters,* 754 S.W.2d 127, 128 (Tex. 1988). Because the two are essentially different measures of the same thing, to receive both would amount to a double recovery. The Texas Supreme Court has defined out-of-pocket damages as being "the difference between the value of that which was parted with and the value of that which was received," and benefit of the bargain damages as being "the difference between the value as represented and the value actually received." *Id.* at 128.

The Dudleys argue that the $5,900 they received for out-of-pocket expenses is not the same type of out-of-pocket award defined in *Bankston,* but rather is a representation of their expenses to repair the plumbing problems. However, even assuming arguendo that the out-of-pocket award is a misnomer, to allow it would still be a double recovery.

In *Ludt v. McCollum,* 762 S.W.2d 575 (Tex.1988), the court analyzed whether a plaintiff was entitled to recover both repair costs and the permanent reduction in the market value of his home. The supreme court upheld the lower court's holding that the plaintiff could *not* recover both amounts because that would constitute a double recovery. *Id.* at 576. The court then differentiated between the pre-repair and post-repair diminution awards, reasoning that the former, coupled with an award for repair costs, constitutes double recovery while the latter does not. *Id.; see also Parkway,* 901 S.W.2d at 441. Thus, because the *Ludt* plaintiff only obtained a jury finding establishing pre-repair diminution, he could not recover that in addition to the repair costs. *Ludt,* 762 S.W.2d at 576. In the course of its opinion, the court explained that if the plaintiff had obtained a jury finding on post-repair diminution, he would have been entitled to receive that amount as well as the repair costs. *Id.*

In applying the *Ludt* teaching to the case at bar, we note that the diminution question as submitted, inquired about "the difference, if any, in the value of the house located at 3635 55th Street, Lubbock, Texas, as it was received and the price PHIL DUDLEY, and wife PAT DUDLEY paid for it. The difference, if any, shall be determined at the time and place the sale of the house was done." The second sentence of the question clearly limits the inquiry to pre-repair reduction in value. Following the teaching of the *Ludt* court, we hold the Dudleys may not receive both the pre-repair diminution award as well as

the repair costs. Accordingly, we reduce the Dudleys' award of actual damages by $5,900.

■ We next turn our attention to the Blackstocks' third point contention that the trial court should have applied a set-off credit for the damages received by the Dudleys by virtue of the Margaret Williams settlement. We believe that the "one-satisfaction" doctrine mandates such a set-off. Before discussing our reasoning in reaching that conclusion, a recounting of the facts leading up to the settlement is necessary. Just prior to the end of the trial, Margaret Williams filed a motion seeking an instructed verdict, which was partially granted. Because of its ruling, the trial court dismissed four of the sixteen claims which left 12 of them pending. Several of the claims left pending were identical to claims against the Blackstocks. The next day, Margaret Williams was dismissed from the lawsuit as the result of a settlement of the claims still pending.

After trial, the Blackstocks' request for a set-off was denied by the trial court because it concluded "the conduct was unrelated to the undisclosed plumbing problems of the action taken against the Defendants BLACKSTOCKS and secondly that the damages recovered were not related to the damages recovered by the Plaintiffs." We respectfully disagree. Several of the claims left pending against Margaret Williams such as repair cost, loss of value because of the plumbing, and mental anguish, of necessity, must have been related to those made against the Blackstocks. That being true, we cannot agree with the trial court's conclusion.

In their argument, the Blackstocks contend that section 33.012 of the Civil Practice and Remedies Code controls this issue. That section provides that claimants who have settled their claims with one or more parties must have their damages reduced by following one of the two procedures outlined in the statute. Tex. Civ. Prac. & Rem.Code Ann. § 33.012(b) (Vernon 1997). The Dudleys respond to that argument by contending that the common law governs in this case because the Code had no such set-off provision in 1987 when this case was filed. Additionally, the Dudleys assert that the Blackstocks have not met their common law burden of proving their right to a set-off credit.

■ While we agree with the Dudleys that the common law is applicable here, we conclude that the Blackstocks have met their burden. A party may meet its common law burden of proving entitlement to a set-off by placing the settlement agreement or some evidence of the settlement amount into evidence. *See First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 78–79 (Tex.1993). The record before us includes the parties' joint motion to dismiss, the dismissal order and the Blackstocks' hearing brief on the plaintiff's motion for judgment. The motion to dismiss and the dismissal order establish the settlement agreement, and the hearing brief shows the amount of the settlement to be $5,000. The court in *First Title* found this type of proof sufficient and so do we.

Having determined that the Blackstocks have shown their right to a set-off, we must next decide how to determine the amount of set-off to which they are entitled. In *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 5 (Tex.1991), the court noted that at that time, there existed four separate contribution schemes, three based on statute and one created at common law, namely: 1) the original contribution statute, Tex. Civ. Prac. & Rem.Code Ann. § 32.001 *et.seq.* (Vernon 1986); 2) former Tex. Civ. Prac. & Rem.Code Ann. § 33.001 *et seq.* (Vernon 1986), *amended by* Acts 1987, 70th Leg. 1st C.S., ch. 2, § 2.04 (the comparative negligence statute); 3) Tex. Civ. Prac. & Rem.Code § 33.001 *et seq.* (Vernon 1991) (the comparative responsibility); and 4) *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 429 (Tex.1984) (common law contribution by comparative causation). *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d at 5. The

applicable contribution scheme is determined by the theories of liability adjudged against the tortfeasors. *Id.* at 5; *citing Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 20 (Tex.1987). In *Sterling*, the court explicated the manner in which the applicability of the various schemes are determined as follows:

> The comparative negligence statute applies only in pure negligence cases filed before September 2, 1987. The *Duncan* comparative causation scheme applies only to products cases involving strict liability, breach of warranty, and mixed theories of strict liability and negligence tried after July 13, 1983. In 1987, the legislature enacted the comparative responsibility statute which merged the comparative negligence statute with the holdings of *Duncan*. The effective date of this new statute is September 2, 1987.

*Id.*

Because the instant case was filed after September 2, 1987, and does not involve strict liability, breach of warranty, or mixed theories of strict liability and negligence, neither the comparative negligence statute nor the *Duncan* scheme are applicable to this case. The comparative responsibility statute enacted in 1987 has very limited applicability to DTPA actions. *Id.* at 6, n. 7. This limitation renders the 1987 statute inapplicable, so we next look to see if the original contribution statute, section 32.001, applies. *See Jinkins*, 739 S.W.2d at 20 (for the proposition that any remaining tort actions not covered by common law or the comparative negligence statute are within the domain of the original contribution statute). Although Chapter 32 of the Civil Practice and Remedies Code covers a defendant's right to contribution, it does not make express provisions as to contributions from settling co-defendants. Tex. Civ. Prac. & Rem.Code § 32.002. Thus, we must look to common law rules for assistance in determining how to properly credit the Blackstocks. In multiple cases, the supreme court has held that prevailing parties are only entitled to one satisfaction for each injury. *Sterling*, 822 S.W.2d at 5; *First Title*, 860 S.W.2d at 78; *Bradshaw v. Baylor Univ.*, 84 S.W.2d 703, 705 (Tex.1935). This rule directs that a non-settling party must be credited for the amount paid by the settling party. If this were not the rule, a plaintiff would receive a windfall by recovering not only an amount found by the factfinder which fully covers his damages but, in addition, the amount paid by settling co-defendants. *Id.* at 705.

Originally, there were two common law measures to determine credits: the *Bradshaw* measure, which allowed a dollar-for-dollar credit to the non-settling party, and the *Palestine* measure, which decreased the plaintiff's recovery by one-half. *See Bradshaw*, 84 S.W.2d at 703 and *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764 (Tex.1964). In *Sterling*, the court noted the *Bradshaw* measure was the correct method and expressly disapproved methods to the contrary. *Sterling*, 822 S.W.2d at 10. Therefore, the Blackstocks are entitled to a dollar-for-dollar credit in the amount of the settlement, which the record shows to be $5,000. Thus, judgment for actual damages is reduced by the amount of $5,000. The Blackstocks' third point is sustained to the extent that the amount of actual damages is reduced by $10,900.

## CALCULATION OF PREJUDGMENT INTEREST

In their fourth point, the Blackstocks contend the trial court erred in its compilation of the prejudgment interest awarded in the judgment. In that point, they contend the trial court miscalculated the principal amount upon which prejudgment interest is applied because that amount includes 1) additional (mental anguish) damages not permitted by the DTPA, 2) mental anguish damages that had not definitely accrued on a date prior to the date of the original petition, and 3) mental anguish damages which are not related to the lost use of money. Because the Blackstocks limit their challenge to the

items upon which prejudgment interest was applied, and do not challenge the actual manner in which the interest was calculated, we will limit our discussion to the trial court's application of interest to mental anguish damages.

Initially, while it is true that under the current DTPA, courts may not award prejudgment interest on mental anguish awards, Tex. Bus. & Com.Code Ann. § 17.50(f)(2) (Vernon Supp.2000), we do not look to the current law for guidance in this case. Rather, we must follow the version of the DTPA in existence at the time the deceptive act or practice occurred. *Woods v. Littleton*, 554 S.W.2d 662, 667 (Tex.1977); *State Farm Fire & Cas. Co. v. Gros*, 818 S.W.2d 908, 917 (Tex.App.—Austin 1991, no writ); *Robinwood Bldg. & Dev. Co. v. Pettigrew*, 737 S.W.2d 110, 111 (Tex.App.—Tyler 1987, no writ). It is undisputed that the Blackstocks' representations that gave rise to the suit were made in 1986; thus, the DTPA statute in effect at that time governs the disposition of this case. The 1986 version of the DTPA did not exclude "additional damages" from the application of prejudgment interest. Tex. Bus. & Com. Code Ann. (Vernon 1986). Moreover, mental anguish damages were not included in the statutory list of "additional damages." Under the 1986 law, the principal amount upon which prejudgment interest is applied incorporates mental anguish damages. *Allright, Inc. v. Pearson*, 711 S.W.2d 686, 697 (Tex.App.—Houston [1st Dist.] 1986), *rev'd on other grounds*, 735 S.W.2d 240 (Tex.1987); *B.J. Hughes, Inc. v. Gibson*, 697 S.W.2d 39, 42 (Tex.App.—Tyler 1985, writ ref'd n.r.e.). This argument of the Blackstocks is overruled.

In their second argument under this point, the Blackstocks cite *Rotello v. Ring Around Products, Inc.*, 614 S.W.2d 455 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) for the general proposition that prejudgment interest may only be applied to damages that are established at a definite time and for a definite amount. They argue that the Dudleys' mental anguish damages did not definitely accrue before the date of the original petition, and thus they were not entitled to prejudgment interest on those damages. In *Johnson & Higgins v. Kenneco Energy*, 962 S.W.2d 507, 531 (Tex.1998), the supreme court adopted the recent legislative approach to prejudgment interest, holding that "under the common law, prejudgment interest begins to accrue on the earlier of (1) 180 days after the date a defendant receives written notice of a claim, or (2) the date suit is filed." Therefore, for prejudgment interest to be applied to the Dudleys' mental anguish damages, they must have accrued by the date of the petition, at the latest. We believe that such damages had accrued at that point. Certainly, a large amount of the Dudleys' mental anguish occurred prior to filing suit, when the floods were regularly occurring in the Dudleys' home. Consequently, we find that an award of prejudgment interest on those damages was appropriate, and overrule the Blackstocks' second argument on this point.

The Blackstocks' third argument, without citation of relevant authority, is that prejudgment interest is compensation for the loss of use of money, and the Dudleys should not be awarded interest on their mental anguish damages because they did not suffer any actual loss of money in that regard. We disagree with that proposition. A plethora of cases have allowed and applied prejudgment interest to mental anguish damages. *See, e.g., Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 368 (Tex.1987); *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 556 (Tex.1985); *Farmers and Merchants State Bank of Krum v. Ferguson*, 617 S.W.2d 918, 922 (Tex.1981); *State Farm Fire & Cas. Co. v. Vandiver*, 970 S.W.2d 731, 746 (Tex.App.—Waco 1998, no writ); *Gibson*, 697 S.W.2d at 42. Therefore, the Blackstocks' third argument on this point is overruled.

## CALCULATION OF ATTORNEY'S FEES

 In their fifth and final point, the Blackstocks argue that the trial court improperly increased the jury award of attorney's fees. In response to the question submitted to it, the jury found the Dudleys were entitled to $15,000 attorney's fees for preparation and trial, and $0 for all appeals. The Dudleys successfully filed a motion seeking judgment n.o.v. as a result of which the trial court awarded them fees in the amount of $24,900 for preparation and trial, an additional $4,500 in the event of an appeal to the Court of Appeals, $4,500 for the making of, or responding to, an application for writ of error to the supreme court, and $5,000 if the application for writ of error is granted by the supreme court. In supporting this point, the Blackstocks argue the trial court's action impermissibly invaded the province of the jury to determine the fees.

 Our supreme court has held that when a party seeking attorney's fees establishes the reasonableness of the amount requested, offers uncontradicted testimony on the amount, and the opposing party has an opportunity to disprove the testimony but fails to do so, an award of the attorney's fees sought is proper. *Brown v. Bank of Galveston Nat. Assoc.*, 963 S.W.2d 511, 515 (Tex.1998). *See also Board of County Com'rs of County of Beaver Okla. v. Amarillo Hosp. Dist.*, 835 S.W.2d 115, 128 (Tex.App.—Amarillo 1992, no writ). The Blackstocks' fifth point is overruled.

## DENIAL OF POST–REPAIR STIGMA VALUE AND LOSS ON RESALE

The Dudleys filed a cross-point in which they complained of the trial court's refusal to allow them to introduce evidence regarding the post-repair stigma value of the house, and loss on resale. However, in response to the Blackstocks' motion to dismiss the cross-point on the basis that the Dudleys did not file a notice of appeal, the Dudleys requested that we consider this cross-point in the event we decided a re-

mand was necessary because of one of the Blackstocks' points. A remand is not necessary because we can modify the judgment and affirm it as modified. *See* Tex. R.App. P. 43.2(b).

Accordingly, the judgment of the trial court is modified to reduce the actual damage award to $11,000 and the prejudgment interest award is reduced to $11,626.85 (3,858 days at $3.01 per day). As modified, the judgment of the trial court is affirmed.