Affirmed in Part; Reversed and Remanded in Part; and Memorandum Opinion
filed August 31, 2004









 

Affirmed in Part; Reversed and Remanded in Part; and
Memorandum Opinion filed August 31, 2004.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00071-CV

____________

 

JOHN M. YOUNG,
M.D., AND MARANATHA, INC., Appellants

 

V.

 

CARLOS LEACH AND
GULF COAST MARKETING CORP.

D/B/A
JAY BETTIS & CO. YACHT SALES, Appellees

 



 

On Appeal from the 212th
District Court

Galveston County, Texas

Trial Court Cause No. 99CV0572

 



 

M E M O R A N D U M   O P I N I O N








This case involves a dispute over the
purchase of a yacht.  Appellants John
Young, M.D., and Maranatha, Inc. sued appellees Carlos Leach and Gulf Coast
Marketing Corp. d/b/a Jay Bettis & Co. Yacht Sales (ABettis@) for fraud,
breach of warranty, and violations of the Texas Deceptive Trade Practices Act (ADTPA@).  Appellants sued Leach additionally for breach
of contract.  Appellees counterclaimed
for attorneys= fees. 
The trial court granted appellees= no-evidence
motion for summary judgment as to all of appellants= claims.  After a bench trial on appellees= counterclaim for
attorneys= fees, the trial court found that appellants= DTPA claims were
without merit and awarded attorneys= fees to Leach and
Bettis.  We affirm the trial court=s summary judgment
except as to (1) Maranatha=s
breach-of-contract claim against Leach; (2) Maranatha=s
breach-of-warranty claim against Leach; and (3) Maranatha=s DTPA claims
under sections 17.46(b)(5) and 17.46(b)(7) of the Business and Commerce Code
against Leach and Bettis.  We find
Maranatha produced more than a scintilla of evidence regarding these claims,
and we reverse and remand in part on these issues.  Regarding appellees= counterclaim for
attorneys= fees, we affirm the trial court=s judgment
assessing attorneys= fees against Young under the DTPA.  However, because we remand two of Maranatha=s DTPA claims, we
reverse and remand the trial court=s judgment
assessing attorneys= fees against Maranatha. 

I.  
Background

In May of 1997, Young executed a Brokerage Purchase Agreement
to buy a Choey Lee yacht named the C-Rose.  For tax purposes, he formed a Delaware
corporation, Maranatha, to complete the purchase of the vessel.  Young assigned all of his rights and
obligations under the purchase agreement to the corporation.

The agreement provided for Young to conduct a sea-trial
survey of the vessel prior to closing. 
After reviewing two surveys, Young negotiated for a reduction in the
price to account for defects and damage found in the surveys.  He then signed an acceptance of the vessel on
behalf of Maranatha. 

II.  
The Motion for Summary Judgment








In their first issue, appellants contend
the trial court erred in granting Leach and Bettis=s no-evidence
motion for summary judgment.  We review a
no‑evidence motion for summary judgment by ascertaining whether the non‑movant
produced more than a scintilla of probative evidence to raise a genuine issue
of material fact as to the essential elements attacked in the no‑evidence
motion.  Dolcefino v. Randolph, 19
S.W.3d 906, 916 (Tex. App.CHouston [14th
Dist.] 2000, pet. denied).  More than a
scintilla of evidence exists when the evidence Arises to a level
that would enable reasonable and fair‑minded people to differ in their
conclusions.@  Merrell Dow Pharm., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997).  We take as
true all evidence favorable to the non‑movant, and we make all reasonable
inferences therefrom in the non‑movant=s favor.  Dolcefino, 19 S.W.3d at 916.  A no‑evidence motion for summary
judgment must be granted if the party opposing the motion does not respond with
competent summary‑judgment evidence that raises a genuine issue of
material fact.  Id. at 917.  Because the trial court did not specify the
grounds for its ruling, we will affirm if any of the grounds advanced in the
motion has merit.  See Carr v. Brasher,
776 S.W.2d 567, 569 (Tex. 1989).

A.      Young

We first address Young=s arguments
regarding why the trial court erred in granting the no-evidence summary
judgment.  In the motion, Leach and
Bettis argued that Young did not have standing to sue.  Young concedes he assigned all of his rights
and responsibilities under and causes of action arising from or relating to the
purchase of the C-Rose to Maranatha. 
While they assert a general point of error on appeal, appellants present
argument only concerning Maranatha=s standing to
sue.  Because the trial court could have
dismissed Young=s claims on the basis that he lacked
standing to sue, we overrule Young=s first issue and
affirm the trial court=s grant of summary judgment with regard to
all of Young=s claims. 
Evans v. First Nat=l Bank of
Bellville, 946 S.W.2d 367, 377 (Tex. App.CHouston [14th Dist.] 1997, pet. denied) (finding that where a
judgment may rest upon more than one ground, the party aggrieved by the
judgment must present argument to each ground or the judgment will be affirmed
on the ground to which no complaint is made).

B.      Maranatha









We now turn to Maranatha=s claims against
Leach and Bettis.  Maranatha contends two
misrepresentations were made to Young during the purchase of the vessel.  First, Leach, the previous owner of the C-Rose,
told Young prior to closing that the vessel=s Naiad
stabilizers functioned properly.  Second,
Bettis, the broker for the sale, told Young that the hull and fuel tanks were
sound.  These two alleged statements form
the basis of Maranatha=s fraud, breach-of-warranty, and DTPA
claims.  Maranatha also claims Leach did
not perform all of his obligations under the purchase agreement.

1.       Fraud

To recover for common-law fraud, Maranatha
was required to prove that (1) a material representation was made to it; (2)
the representation was false; (3) the misrepresentation was made with knowledge
of its falsity or made recklessly without any knowledge of the truth and as a
positive assertion; (4) the misrepresentation was made with the intent that it
should be acted on by Maranatha; and (5) Maranatha acted in reliance on the
misrepresentation and thus suffered injury. 
Beal Bank, S.S.B. v. Schleider, 124 S.W.3d 640, 647 (Tex. App.CHouston [14th
Dist.] 2003, pet. denied).  We find
Maranatha produced no evidence to show that knowing or reckless
misrepresentations were made to Young.

Maranatha contends that, although Leach
told Young before the sale that the stabilizers functioned properly, Leach knew
the stabilizers did not work and affirmatively concealed the defect by
prohibiting Maranatha=s surveyor from testing the
stabilizers.  Maranatha submitted
testimony from a repairman, Craig Calkins, who looked at the C-Rose
prior to the sale.  He recommended to
someone on the vessel, not Leach, that an obsolete valve be replaced.  Calkins said he probably also recommended
that Asome seals@ be replaced
because they should be replaced every two to three years.  Calkins could not recall whether he told
Leach about the valve or seals.  Maranatha points to this testimony as
evidence, but it does not explain how this evidence supports its claim
regarding the purported defects in the stabilizers.  Moreover, although Young=s surveyor said he
did not test the stabilizers on the day of the inspection, he was not sure who
did not want them tested that dayCit could have been
Leach or it could have been someone else. 
Notably, the
sea-trial survey was to be conducted to the buyer=s satisfaction.  However, there is no evidence to suggest that
Young, after learning the stabilizers had not been tested, requested they be
tested or that such a request was denied by Leach.  Thus, Maranatha produced no evidence that
Leach knew of a defect with the stabilizers and attempted to conceal it. 









Maranatha argues Bettis=s statement that
the vessel=s hull and fuel tanks were sound was made
recklessly.  Here, Maranatha had the
ultimate burden to prove that the statement was made without knowledge of the
truth and as a positive assertion.  Beal
Bank, 124 S.W.3d at 647.  In order
for the statement to be made as a positive assertion, Maranatha had to show
Bettis took responsibility for the truth of the statement.  See J. L. Williams & Co. v. Robert
McKee, Inc., 612 S.W.2d 649, 651B52 (Tex. Civ. App.CDallas 1981, writ ref=d n.r.e.).  Maranatha relies on the testimony of another
broker and a repairman to support this claim. 
The broker testified that it was generally understood by some people in
the industry that an EPA regulation weakened the structure of U.S. resins,
resulting in more osmosis blistering.[1]  The repairman said that all the Cheoy Lees he
has inspected have had problems with the hull due to insufficient resin in the
hull=s laminate and
that everyone he knows is aware of the problem. 
This evidence does not address the vessel=s fuel tanks at
all.  And, while this testimony may
provide some evidence that Bettis, as a broker in the industry, perhaps should
have been aware of the Cheoy Lees= purported hull
problems, it provides no evidence that Bettis=s statement was
made as a positive assertion.  Because
Maranatha provides no context to the alleged misrepresentation and Young does
not contend Bettis assumed any responsibility for the truth of the statement,
there is no evidence to show that Bettis made a reckless misrepresentation to
Young.  We find the trial court properly
dismissed Maranatha=s common-law fraud claim.

2.         Breach of
Warranty








Maranatha also contends Bettis=s and Leach=s statements are
warranties under section 2.313 of the Business and Commerce Code.  The Code provides that an express warranty is created when A[a]ny affirmation of fact or promise
[is] made by the seller to the buyer which relates to the goods and becomes
part of the basis of the bargain.@ 
Tex. Bus. & Com. Code Ann. ' 2.313(a)(1) (Vernon 2003).  ABasis of the bargain@ loosely reflects the common‑law
express warranty requirement of reliance. 
Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 436 (Tex.
1997).  

However, with regard to Bettis=s alleged statement about the hull
and fuel tanks, Maranatha failed to produce any evidence to show the statement
became the basis of the bargain.  The
purchase agreement provided: AThe Broker offers details of the Vessel in good faith but
cannot guarantee the accuracy of the this information nor warrant the condition
of the Vessel.@ 
In light of the contract language, Young=s mere conclusory assertion that he Arelied on@ the representation without providing
additional context or evidence is not enough to show that the alleged statement
became the basis of the bargain.

Regarding Leach=s purported statement prior to
closing that the stabilizers worked, Young said he relied on the representation
in purchasing the C-Rose and would not have purchased the vessel had he
known the representation was false.  The
contract does not disclaim warranties made by the seller.  Having alleged such a representation was made
and relied upon, we find Maranatha produced at least a scintilla of evidence to
support its claim and raised a fact issue as to whether Leach made an express
warranty to Young.  See Tex. Bus. & Com. Code ' 2.313, UCC cmt. 3 (Vernon 2003) (Aany [attempt] to take such
affirmations, once made, out of the agreement requires clear affirmative proof@).

Hence, we find the trial court properly dismissed Maranatha=s breach-of-warranty claim against
Bettis but erred in dismissing Maranatha=s breach-of-warranty claim against
Leach.

3.       DTPA








We turn to Maranatha=s DTPA causes of
action.  Maranatha sought relief under
sections 17.50(a)(2) and 17.46(b)(2), (5), (7), and (13) of the Business and
Commerce Code.  Maranatha also sought
additional damages under section 17.50(b)(1) for a knowing violation of the
statute.  Section 17.50(a)(2) permits a
consumer to obtain DTPA damages for a breach of warranty.  Tex.
Bus. & Com. Code Ann. ' 17.50(a)(2) (Vernon 2003).  Because we
have found Maranatha=s breach-of-warranty claim against Bettis
was properly dismissed, we  uphold the
trial court=s dismissal of its DTPA claim against
Bettis under section 17.50(a)(2) of the Business and Commerce Code.  Humble Nat=l Bank v. DVC,
Inc.,
933 S.W.2d 224, 231 (Tex.
App.CHouston [14th Dist.] 1996, writ
denied) (explaining that, because the DTPA does not create warranties, a
warranty must be established independently of the act).  However, having determined Maranatha produced
at least of scintilla of evidence to support its section 2.313 breach-of-warranty
claim against Leach, we necessarily find the trial court erred in dismissing
its claim against Leach under
17.50(a)(2).  

Maranatha also failed to present argument
to the trial court in response to the motion for summary judgment as to how the
alleged statements made by Leach and Bettis were actionable under sections
17.46(b)(2) and 17.46(b)(13). 
Accordingly, we affirm the trial court=s judgment with
respect to those claims.  See Dubose
v. Workers= Medical, P.A., 117 S.W.3d 916,
920 (Tex. App.CHouston [14th Dist.] 2003, no pet.)
(explaining that failing to properly present issue to trial court waives issue
on appeal).  

Further, Maranatha offered no evidence to
support its request for additional damages under section 17.50(b)(1).  Here, Maranatha relies on the same testimony
it relied upon to argue knowing or reckless misrepresentations were made to
Young.  For the reasons previously
discussed, we find this testimony offers no evidence that the alleged
statements made by Leach or Bettis were made with actual knowledge of their
falsity.  We affirm the trial court=s dismissal of
Maranatha=s claim for additional damages under
section 17.50(b)(1) of the Business and Commerce Code.  








We are left with Maranatha=s claims under
sections 17.46(b)(5) and 17.46(b)(7).  Section 17.46(b)(5) prohibits a
person from making a representation that goods or services have characteristics
that they do not.  Tex. Bus. & Com. Code Ann. ' 17.46(b)(5) (Vernon 2003).  Section 17.46(b)(7) prohibits a person from
representing that goods are of a particular standard, quality, or grade, when
they are not.  Tex. Bus. & Com. Code Ann. ' 17.46(b)(7)
(Vernon 2003).  These provisions have been
interpreted to include false statements about a good=s mechanical condition.  Pennington v. Singleton, 606 S.W.2d
682, 687B88 (Tex. 1980).  To recover under the DTPA, a plaintiff
must establish: (1) he was a consumer of the defendant=s good or
services; (2) the defendant committed false, misleading, or deceptive acts in
connection with the lease or sale of the goods or services; and (3) such acts
were a producing cause of actual damages to the plaintiff.  Dagley v. Haag Eng=g Co., 18 S.W.3d 787,
791B92 (Tex. App.CHouston [14th Dist.] 2000, no
pet.).  In response to the no-evidence
motion for summary judgment, Maranatha was required to offer more than a
scintilla of evidence to demonstrate that the complained-of acts were a
producing cause of its economic damages.  Trinity Universal Ins. Co. v. Bleeker, 966
S.W.2d 489, 491 (Tex. 1998) (finding that a Aproducing cause@ is Aan act that is a
substantial factor that brings about injury and without which the injury would
not have occurred@).  

An injury can have more than one producing
cause, and Texas courts have found that a seller=s
misrepresentations can be a producing cause of a buyer=s injury even when
the buyer conducted an independent investigation.  See, e.g., Kessler v. Fanning, 953
S.W.2d 515, 519 (Tex.
App.CFort Worth 1997, no pet.)
(holding that independent investigation that might have uncovered fraud does
not preclude recovery of damages for misrepresentations); O=Hern v. Hogard, 841 S.W.2d 135,
137B38 (Tex. App.CHouston [14th Dist.] 1992, no writ)
(finding inspection did not constitute new and independent cause of buyers= damages and
determining that appropriate inquiry is whether seller=s act was a
producing cause of the buyers= damages).  The rationale behind doing so is that,
although the buyer may have conducted an independent investigation, he may have
also relied on representations made by the seller and the seller=s agent.  Kessler, 953 S.W.2d at 519.  Thus, without evidence to show that a buyer
relied exclusively on his inspector=s report or had
actual and complete knowledge of the alleged defect, false information provided
by the seller may be a producing cause of the buyer=s damages.  Blackstock v. Dudley, 12 S.W.3d 131, 133B34 (Tex. App.CAmarillo 1999, no
pet.).  








In responding to the no-evidence motion
for summary judgment, Maranatha relied on Young=s affidavit.  According to the affidavit, Leach told Young
the stabilizers worked and Bettis told Young that the hull and full tanks were
sound.[2]  Young found out only after closing that the
stabilizers did not work, water had permeated the hull, and the full tanks leaked.  Young said he would not have purchased the
vessel had he known the representations were false.  The affidavit provides at least a scintilla
of evidence that creates a fact question as to whether the alleged
misrepresentations may have been a producing cause of Maranatha=s purported
damages.  We find the trial court erred
in dismissing Maranatha=s claim under section 17.50(a)(2) of the
Business and Commerce Code against Leach and its claims under sections
17.46(b)(5) and 17.46(b)(7) against Leach and Bettis.  

3.       Breach
of Contract

We now address Maranatha=s
breach-of-contract claim against Leach. 
On this issue, Maranatha also relied on Young=s affidavit in its
response to the motion for summary judgment. 
Attached to the affidavit were the purchase agreement and the acceptance
of the vessel.  The acceptance indicates
Young agreed to purchase the C-Rose on the condition that the shaft log
be repaired and the port engine be aligned. 
Young claimed Leach did not make the repair and also claimed Leach kept
the aft deck enclosure, which was a part of the vessel. 

The evidence establishes that the parties
entered into a contract and that, under the terms of the agreement, Leach was
obligated to repair the shaft log, align the port engine, and convey the items
contained on the listing sheet with the vessel. 
Young produced more than a scintilla of evidence that Leach may not have
fulfilled all his obligations under the contract.  Although testimony and evidence at the
subsequent bench trial on appellees= counterclaim for
attorneys= fees addressed some of these issues, that
evidence was not before the trial court when it ruled on the no-evidence motion
for summary judgment.  Accordingly, we
find the trial court erred in granting summary judgment on Maranatha=s
breach-of-contract claim against Leach.  








In conclusion, we sustain Maranatha=s first issue as
to its breach-of-contract claim and its DTPA claims under sections 17.46(b)(5)
and 17.46(b)(7) of the Business and Commerce Code.  We also sustain its complaint regarding
the trial court=s dismissal of its DTPA claim against Leach
under section 17.50(a)(2).   We overrule
the remainder of Maranatha=s first issue.

III.  
Attorneys= Fees

In their second through fifth issues,
Young and Maranatha attack the trial court=s award of
attorneys= fees to Leach and Bettis.  These fees were recoverable under the DTPA if
the trial court found that Young and Maranatha=s DTPA claims were
groundless in fact or in law and brought in bad faith or for the purposes of
harassment.  Tex. Bus. & Com. Code Ann. ' 17.50(c) (Vernon 2003). 


A.      Maranatha

We have found Maranatha produced more than
a scintilla of evidence at the summary-judgment stage to support its DTPA
claims under sections 17.46(b)(5) and 17.46(b)(7) of the Business and Commerce
Code.  Because we cannot resolve the
issue of whether the trial court erred in assessing attorneys= fees against
Maranatha absent a final determination on the merits of its DTPA claims, we
sustain Maranatha=s second through fifth issues regarding
attorneys= fees.

B.      Young

1.       Pleadings








In his fifth issue, Young contends the
trial court erred in awarding Leach attorneys= fees under
section 17.50(c) of the Business and Commerce Code because he did not plead for
such relief.  Leach did not list this
provision in his counterclaim as a basis to recover attorneys= fees.  We find, however, the issue was tried by
consent.  At the bench trial, Leach=s counsel opened
argument by stating that the bench trial was being conducted solely to consider
appellees= counterclaims under section 17.50(c) of the
DTPA.  He closed with a similar
remark.  Young did not object to these
contentions.  Rather, his counsel asked
the trial court in opening arguments to Arender judgment
that [Leach and Bettis] take nothing by their counter-claim under the DTPA,
Section 17.50(c),@ and said in closing arguments, AWell, Your Honor,
as the Court knows, this is a 17.50(c) counterclaim of attorneys= fees.@  Moreover, Young does not challenge the trial
court=s finding of fact,
which states AAll parties having announced ready and
appearing in person, by counsel or both, the Court proceeded with a non-Jury
trial on the counterclaim of Leach and [Bettis] against Young and Maranatha,
Inc. under Tex. Bus. Comm. Code ' 17.50(c).@   Because the record clearly indicates Leach=s counterclaim for
attorneys= fees was tried by consent under section
17.50(c), we overrule appellants= fifth issue.  Frazier v. Havens, 102 S.W.3d 406, 411
(Tex. App.CHouston [14th Dist.] 2003, no pet.).

2.       Motion
for Judgment

In his third issue, Young claims the trial
court erred in denying his motion for directed judgment on appellees=
counterclaims.  After appellees presented
evidence on their counterclaims, Young made a motion for directed judgment,
which the trial court denied.  The
parties proceeded to try the counterclaims before the court.  Although the motion was mentioned by Young=s counsel during
closing argument, counsel did not re-urge it. 
Because Young did not re-urge his motion, he has not preserved this
issue for appeal.  Cliffs Drilling Co.
v. Burrows, 930 S.W.2d 709, 712 (Tex. App.CHouston [1st Dist.] 1996, no writ); Wenk v. City Nat=l Bank, 613 S.W.2d 345,
348 (Tex. Civ. App.CTyler 1981, no writ).  Accordingly, we overrule Young=s third issue.

3.       Testimony
Regarding Attorneys= Fees








In his second issue, Young contends the
trial court erred in admitting expert testimony regarding appellees= attorneys= fees.[3]  Young argues that neither party was entitled
to expert testimony because, in violation of rule 194.2(f) of the Texas Rules
of Civil Procedure, Bettis did not designate an expert to testify on the
subject of attorneys= fees, and although Leach designated one
of his attorneys as an expert on attorneys= fees, he did not
produce any documents regarding those fees. 

At the hearing, the trial court permitted
Bettis=s counsel to
testify only as a fact witness.  The
trial court restricted his testimony to issues of fact because he had not been
designated as an expert witness.  Bettis=s counsel
testified to the amount of time he had spent on the case up to the first day of
the bench trial and to his hourly rate.[4]


The trial court permitted two attorneys to
testify regarding Leach=s attorneys= fees.  One attorney was allowed to testify only as a
fact witness because he had not been designated to testify as an expert.  The other, Bernard Chanon, had been
designated as an expert witness and was permitted to testify as both a fact and
expert witness.[5]  Young argues that, because Chanon did not
producing billing records in response to discovery requests, the trial court
was required to exclude his testimony unless he demonstrated good cause, lack
of surprise, or lack of prejudice.  

A party who fails to properly respond to
discovery requests may not introduce material or information that was not
timely disclosed or offer testimony of a witness who was not identified unless
the party shows good cause, lack of surprise, or lack of prejudice.  Tex.
R. Civ. P. 193.6.  Here, however,
the trial court did not admit the billing records or any information that was
not disclosed during discovery.  The
trial court merely permitted Chanon to testify. 
Because Chanon was properly identified as an expert, the trial court did
not err in permitting him to testify.  See
Schlager v. Clements, 939 S.W.2d 183, 193 (Tex. App.CHouston [14th Dist.] 1996, writ
denied) (finding that an attorney=s failure to
produce billing statements did not affect the admissibility of his testimony,
merely the credibility of his testimony).








We find the trial court did not admit
expert testimony regarding Bettis=s attorneys= fees and it did
not err in allowing Chanon to testify regarding Leach=s attorneys= fees.  We overrule Young=s second issue.

4.       Findings
of Fact and Conclusions of Law

In his fourth issue, Young contends the
evidence is legally and factually insufficient to support the trial court=s finding that his
DTPA claims were groundless in fact or in law and brought in bad faith or for
the purposes of harassment.  However,
Young presents no reasoning in his two-sentence argument to support this
position.  Additionally, although the
trial court heard three days of evidence and testimony concerning the validity
of his claims, Young does not provide a single record cite to bolster his
argument on appeal.  Thus, Young has
waived this issue.  Casteel-Diebolt v.
Diebolt, 912 S.W.2d 302, 304B05 (Tex. App.CHouston [14th Dist.] 1995, no
writ).  We overrule his fourth issue.

IV.   Conclusion

Because Maranatha produced more than a scintilla of
evidence regarding its breach-of-contract and breach-of-warranty claims against
Leach and its DTPA claims under sections 17.46(b)(5) and 17.46(b)(7) of the
Business and Commerce Code, we find the trial court erred in granting summary
judgment in favor of Leach on the breach-of-contract, breach-of-warranty, and
section 17.50(a)(2) claims and in favor of Leach and Bettis on the DTPA claims
under sections 17.46(b)(5) and 17.46(b)(7). 
We reverse and remand in part on these issues.  We also reverse the trial court=s assessment of
attorneys= fees against Maranatha.  We affirm the remainder of the trial court=s judgment. 

 

 

/s/      Leslie Brock Yates

Justice

 

Judgment
rendered and Memorandum Opinion filed August 31, 2004.

Panel
consists of Justices Yates, Hudson, and Fowler.











[1]  Contrary to
appellees= assertion, we cannot find that the trial court
implicitly granted their motion to strike portions of Young and Maranatha=s summary-judgment evidence.  Harris v. Spires Council of Co-Owners,
981 S.W.2d 842, 897 (Tex. App.CHouston [1st Dist.] 1998, no pet.) (finding that, by
not obtaining a written ruling, a party waives objection to hearsay evidence in
the summary-judgment record).





[2]  Although the
disclaimer in the purchase agreement limits the broker=s warranties, the Texas Supreme Court has determined
that written disclaimers cannot waive a consumer=s right
to pursue non-warranty representations under the DTPA.  Helena Chem. Co. v. Wilkins, 47 S.W.3d
486, 505 (Tex. 2001).





[3]  Young does not
make a general argument regarding the reasonableness of the attorneys= fees awarded to Leach and Bettis under the DTPA.  Young argues only that the trial court erred
in admitting expert testimony regarding appellees=
attorneys= fees. 
Accordingly, we limit our discussion to that issue.





[4]  Notably, Young=s counsel told the trial court that
Bettis=s fees were reasonable. 





[5]  Chanon testified only to the
reasonableness of the fees billed to Leach.