

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-20-00255-CV
_____

IN THE INTEREST OF G.S.T., JR., A CHILD, APPELLANT, APPELLEE

On Appeal from the 316th District Court
Hutchinson County, Texas
Trial Court No. 44,010, Honorable James M. Mosley, Presiding

February 2, 2021

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

G.S.T.'s Mother and Father appeal from the trial court's judgment terminating their parental rights. Each filed a separate appellant's brief. Mother contends that the evidence is insufficient to support the finding that termination is in the best interest of the child. Father raises a due process complaint because the trial court failed to provide him the opportunity to participate in the final termination hearing. We affirm.

*Evidence of Record*

Paula Mears, an investigator with Child Protective Services (CPS), testified that she had received an intake on Mother on September 17, 2019, which indicated that Mother "was using methamphetamine and leaving the seven-year-old child alone or just

with random people." G.S.T., Jr. was identified as the child. Father was incarcerated at the time. In speaking with the child, Mears discovered that he had witnessed Mother's drug use, that Mother would "leave him to go smoke drugs with her friends," and that he had witnessed "domestic violence between his mother . . . and her boyfriend."

Mears attempted to contact Mother. However, she initially did not return the calls. Eventually, though, Mother visited Mears at the latter's office, but without the child. Her pupils were dilated at the time and demeanor indicated she was under the influence of something, according to Mears. When asked to submit to drug testing, Mother refused.

According to Mother, Father was incarcerated, "wasn't ever around," "hadn't been in the picture," and had not been involved with the child for most of the child's life. This left Mears with the impression that he had never had a relationship with his child. Indeed, G.S.T., Jr. would call Mother's boyfriend "father" and the boyfriend called him his "son." Two days later, on September 26th, the child was removed.

Mears attempted to contact Father by letter. She received no response, though, before the matter was reassigned to another caseworker, Dale Vincent.

Vincent remained the child's caseworker through trial. According to Vincent, Mother refused drug testing and did not submit to such a test until the court ordered it.

The petition for termination was filed on September 26, 2019. The next day, on September 27, 2019, Mother submitted a drug screen which returned positive for amphetamines and methamphetamines. A drug screen was also performed on the child, which test returned positive for methamphetamine.

Mother was given a service plan in October of 2019 wherein she was ordered to "comply with the Department [and] participate in drug and alcohol assessment with

2

OSAR." She completed her OSAR assessment but did not comply with the OSAR recommendations. She also failed to 1) participate in "Woman Against Violence program," counseling, and parenting classes, 2) maintain employment, and 3) maintain stable and appropriate housing.

At the time of the hearing, Vincent did not know where Mother was living. Furthermore, as a result of her drug evaluation, it was recommended that she attend inpatient treatment; she did not. Nor did she submit to drug testing when requested on October 22nd, November 15th, and December of 2019. A February 2020 test that she underwent per court order was positive for methamphetamine. And, as she did during the end of 2019, she again failed to submit to testing in March, April, June, July, and August of 2020.

On June 10, 2020, Borger police found Mother asleep in a vehicle parked behind a local business. A male accompanied her. Mother consented to a vehicle search which search uncovered a syringe with methamphetamine. Mother admitted it was hers, resulting in her arrest for possessing the controlled substance. Additionally, when asked why she was sleeping in the car, she conceded that she had nowhere else to go.

Mother visited her child sporadically once the child was removed and placed with foster parents. Testimony also described the child as "doing fantastic" in his then current environment. According to evidence of record, he "loves school, . . . enjoys being with the foster parents, and . . . [is] connected to them." His foster parents also wish to adopt him.

Vincent opined that Mother had not shown a willingness to make changes in her lifestyle and provide safety and security for her son.  The caseworker also recommended termination of the parental relationship.

As for Father, the record illustrated that he had been incarcerated throughout the life of the case.  Furthermore, Vincent had sent him "a parenting workbook and . . . several workbooks, a rational behavior – a parenting – just to try to help him."  However, the caseworker had "not received any correspondence from him since . . . March."  Nor had Father contacted the child during the pendency of the case.

The trial court terminated the parental rights of both parents.  Both appealed.

*Mother's Appeal*

Mother challenged only the sufficiency of the evidence to support the finding that termination was in the best interest of the child.  We overrule the issue.

Parental rights may be involuntarily ended if a two-pronged test is met.  That is, clear and convincing evidence must establish both one or more of the twenty-one statutory grounds permitting termination and termination must be in the child's best interests.  *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam).  Mother did not dispute that clear and convincing evidence established the first prong.  Therefore, unchallenged predicate statutory grounds support the termination of Mother's parental rights.[1]

---

[1] Pursuant to the Texas Supreme Court opinion in *In re N.G.*, we generally review the trial court's findings under section 161.001(b)(1)(D) and (E) when challenged.  This is so because of the potential future consequences to a parent's parental rights concerning a different child. *In re N.G.*, 577 S.W.3d at 235–37.  Here, Mother's use of methamphetamine and her unwillingness to seek help for her drug use is sufficient evidence establishing § 161.001(b)(1)(D) & (E) of the Texas Family Code.  *See In re B.C.A.*, No. 07-20-00258-CV, 2021 Tex. App. LEXIS 58, at *6 (Tex. App.—Amarillo Jan. 6, 2021, no pet. h.) (mem. op.); *see also In re V.A.*, No. 07-17-00413-CV, 2018 Tex. App. LEXIS 1521, at *10 (Tex. App.—Amarillo Feb. 27, 2018, no pet.) (mem. op.) (stating that a parent's continued use of drugs demonstrates an inability to provide for the child's emotional and physical needs and a stable environment warranting termination).

We turn to our analysis to the evidence supporting the court's best interest finding. To that end, we also refer back to the evidence of record described above and hold it to be clear and convincing evidence upon which the trial court could legitimately determine that termination of the parental relationship was in the child's best interest. *See In re Z.N.J.*, No. 07-19-00102-CV, 2019 Tex. App. LEXIS 5478, at \*7–8 (Tex. App.—Amarillo June 28, 2019, pet. denied) (mem. op.) (involving similar circumstances and holding that they were sufficient to support the best interests finding of the trial court).[2]

*Father's Appeal*

In his single issue, Father contended that the trial court violated his due process rights by not allowing him to participate in the final termination hearing. We overrule the issue.

In a pro se motion for a bench warrant, Father timely requested he be allowed to appear and participate in the trial. If that were not granted, he also requested to appear by either telephone or video conference. None of those avenues were accorded him. Yet, he had appointed legal counsel who appeared on his behalf and announced ready

---

[2] In determining the best interest of a child, courts apply the non-exhaustive *Holley* factors in performing their analysis. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 13, 27 (Tex. 2002). "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

5

prior to trial. Counsel also had opportunity to examine witnesses, present evidence on her client's behalf, and proffer argument.

As reiterated in *In re M.A.*, No 04-19-00648-CV, 2020 Tex. App. LEXIS 1605 (Tex. App.—San Antonio Feb. 26, 2020, no pet.) (mem. op.);

> The termination of parental rights involves fundamental constitutional rights, and we strictly scrutinize proceedings that seek to terminate those rights. . . . A litigant cannot be denied reasonable access to the courts simply because she is incarcerated. However, inmates do not have an absolute right to appear in person at every court proceeding. A trial court abuses its discretion when its failure to act on an inmate's request for participation, in person or by other means, effectively bars the inmate from presenting her case.

*Id.* at *5 (citations omitted); *In re Marriage of Niyonzima*, No. 07-18-00287-CV, 2019 Tex. App. LEXIS 1388, at *2–3 (Tex. App.—Amarillo Feb. 25, 2019, no pet.) (mem. op.) (generally stating the same); *In re T.L.B.*, No. 07-07-0349-CV, 2008 Tex. App. LEXIS 9400, at *10–13 (Tex. App.—Amarillo Dec. 17, 2008, no pet.) (mem. op.) (generally stating the same). And, as we observed in *Niyonzima*, the right to access the courts "encompasses the opportunity to present evidence or contradict the evidence of an opposing party." *In re Marriage of Niyonzima*, 2019 Tex. App. LEXIS 1388, at *3.

No doubt, legal counsel exists to advocate zealously for his or her client. Father had appointed legal counsel at the trial. As mentioned earlier, counsel had the opportunity to present and attack evidence. She had opportunity to argue on behalf of Father and constituted, euphemistically, Father's mouthpiece. More importantly, we have been cited to no competent evidence of record suggesting that more could have been done on behalf of Father's interests had Father been present or participated through other reasonable

6

means.[3]  So, the limited record before us does not illustrate that Father was denied his right of access or to due process.

However, our review of the record revealed a discrepancy in the trial court's judgment.  That discrepancy being the date of the child's birth is incorrect.  The judgment shows that date to be May 29, 2019, when other documented evidence and testimony given at trial gave the child's birth as May 29, 2012.  Furthermore, the 2012 date would correspond with the child's age at the time of his removal in 2019 as a seven-year-old child.  Moreover, this Court has the authority to modify a trial court's judgment to make the record speak the truth when it has the requisite data and information. *See* TEX. R. APP. P. 43.2(b); *Blackstock v. Dudley,* 12 S.W.3d 131, 139 (Tex. App.—Amarillo 1999, no pet.).  Based on this authority and the reporter's record of the termination hearing, we modify the trial court's termination order to reflect G.S.R., Jr.'s birthdate as May 29, 2012.

The judgment terminating the parental rights of Mother and Father is affirmed as modified.


Per Curiam

---

[3] Father mentioned in his brief that his presence would have allowed him to reveal he would be eligible for parole by a particular month and day.  Yet, no record reference substantiating the accuracy of that accompanied the comment.  And, we generally cannot consider matters outside the appellate record. *Murphy v. Terrazas*, No. 07-18-00184-CV, 2019 Tex. App. LEXIS 38, at *3 (Tex. App.—Amarillo Jan. 4, 2019, pet. denied) (mem. op.).